MENZO LAMBERT *et al.*

*v.*

JOHN ALCORN.

*Filed at Ottawa, January* 19, 1893.

1. DRAINAGE — *into any natural water-course.* Under section 4 of the act of 1885, relating to drainage, the land owner may drain his land in the course of natural drainage and discharge the water into any natural water-course, or into any natural depression, whereby the water will be carried into some natural water-course.

2. SAME — *rights of owner of dominant heritage.* The owner of a higher tract of land has the right to have the surface water falling or naturally coming on his premises by rains or melting snows pass off through the natural drains, upon or over the lower or servient lands next adjoining; and the owner of the dominant heritage has the right by ditches and drains to drain his own land into the channel provided by nature, even if the quantity of water in that way thrown upon the next adjoining lower lands is thereby increased.

3. WATER-COURSE — *defined.* If the conformation of the land is such as to give to the surface water flowing from one tract to the other a fixed and determinate course, so as to uniformly discharge it upon the servient tract at a fixed and definite point, the course thus uniformly followed by the water in its flow is a water-course within the meaning of the rule applicable to that subject.

4. But such water-course can exist only where there is a ravine, swale or depression of greater or less depth, and extending from one tract to the other, and so situated as to gather the surface water falling upon the dominant tract, and to conduct it along a defined course to a definite point of discharge upon the servient tract.

5. It is not important that the force of the water flowing from one tract to the other has not been sufficient to wear out a channel or canal having definite and well marked sides or banks. That depends upon the nature of the soil and the force and rapidity of the flow of the water. If the surface water, in fact, uniformly and habitually flows off over a given course, having reasonable limits as to width, the line of its flow is, within the meaning of the drainage law, a water-course.

6. SAME — *right to improve.* A natural water-course is not required to be used only in its natural state, but may be improved, either by being deepened or widened by artificial means, or by the construction along its course of a channel or drain beneath its surface for the purpose of more effectually carrying off the surface water from the land. The construction of such improvement does not create a substantively new water-course nor amount to an abandonment of the natural water-course.

7. PONDS — *their outlet.* Where ponds, situate on uplands, are surrounded with what may be called a rim with a slight depression at some point over which the water escapes when their basins are full, such point will constitute their outlet.

8. INJUNCTIONS — *partial dissolution — damages.* Damages may properly be assessed and awarded to the defendant on a partial dissolution of an injunction, and such assessments have been sustained by this court.

9. SAME — *dissolution — solicitor's fees as damages.* A defendant may recover, as damages on dissolution of an injunction, the solicitor's fees which he has paid, or become obligated to pay, for services ren-

dered in obtaining a dissolution of the injunction, but not for those rendered in the general defense of the suit. When the evidence fails to discriminate between services rendered in the case generally and those strictly necessary to procure a dissolution of the injunction, the allowance of the fees of counsel can not be sustained.

10. SAME — *pendente lite.* Where a bill seeks for a perpetual injunction against the laying of a tile drain, an injunction *pendente lite* is a mere ancillary writ which may be applied for or not, its only office being to preserve the matters in their original condition until a final hearing.

11. When such a bill is prosecuted without a preliminary injunction, the defendant may proceed without being liable for contempt, but in that case he acts at the risk of having his acts *pendente lite* declared illegal, and of being compelled to restore everything to its original condition.

12. SAME — *granted on matters not litigated — dismissed without prejudice.* To a bill to enjoin a defendant from draining *all* his land across the complainants' land, the defendant answered denying any purpose or present intention of draining a fifty-acre tract of his over the complainants' premises, and claiming the right to drain his other land over the same. On the hearing the court dissolved the injunction as to all the land except the fifty acres, and as to that made the injunction perpetual: *Held,* that in the absence of proof showing, at least, a *prima facie* case as to the fifty acres, the complainant was not entitled to the relief sought, and that as the right to extend the drain over the fifty-acre tract was not litigated, the bill should be dismissed without prejudice.

APPEAL from the Appellate Court for the Second District;— heard in that court on appeal from the Circuit Court of La Salle county ; the Hon. DORRANCE DIBELL, Judge, presiding.

Messrs. BROWN & AYERS and Mr. J. B. RICE, for the appellants :

There must have existed on both the lands of the parties a connected water-course by which the proposed drainage was to be effected. *Peck* v. *Herrington,* 109 Ill. 611 ; *Miller* v. *Laubach,* 47 Pa. St. 154 ; *Butler* v. *Peck,* 16 Ohio St. 334 ; Washburn on Easements, 353, 354 ; *Commissioners of Highways of Pre-emption* v. *Whitsitt,* 15 Ill. App. 318 ; *Wagner* v. *Chaney,* 19 id. 546 ; *Hicks* v. *Silliman,* 93 Ill. 255 ; *Dickinson* v. *City of Worcester,* 7 Allen (Mass.), 19 ; *Livingston* v. *McDonald,* 21 Iowa, 160 ; Washburn on Easements, 224, sec.

16 ; *Martin* v. *Riddle,* 26 Pa. St. 415 ; *Kaufmann* v. *Griesmer,* id. 407.

Increase of the burden on lower heritage, by enlargement of the open ditch across appellee's land from time to time during past twenty years, must of necessity prevent any prescriptive right of flow over land of appellants from being acquired by appellee. Tiedeman on Real Property, 605 ; Wood on Nuisances, 457, sec. 415 ; Washburn on Easements, 287, sec. 48.

Has not gained any prescriptive right to such flow by even twenty years' enjoyment. *Rawstrom* v. *Taylor,* 11 Exch. 369 ; Wood on Nuisances, 415, 416.

Appellee does not propose to use even this artificial channel, but will construct an entirely new and independent artificial channel to convey the waters from his lands.

Owner of the higher lands has no right to open or remove natural barriers and let on to lower lands water which would not otherwise naturally flow in that direction. *Anderson* v. *Henderson,* 124 Ill. 164; *Dayton* v. *Drainage Com.,* 128 id. 271 ; *Kaufmann* v. *Griesmer,* 26 Pa. St. 407.

Must drain into a natural water-course or channel on dominant heritage. *Peck* v. *Herrington,* 109 Ill. 611; *Wagner* v. *Chaney,* 19 Ill. App. 546 ; *Commissioners of Highways of Pre-emption* v. *Whitsitt,* 15 id. 318.

Can not collect water from the dominant heritage by ditches and other artificial means, and without discharging them into a natural water-course on dominant heritage, but instead into an artificial channel, discharge them through the same upon lower lands. *Wagner* v. *Chaney,* 19 Ill. App. 546; *Hicks* v. *Silliman,* 93 Ill. 255 ; *Miller* v. *Laubach,* 47 Pa. St. 154.

There did not exist across either the lands of appellee or those of the appellants, or of all collectively, a natural water-course at time of commencement of this suit, or prior thereto.

Definition of water-course. Angell on Water-Courses, 2, 5; *Earle* v. *De Harte,* 1 Beasley Ch. (N. J.) 283–284.

Record shows that proposed drainage will result in absolute destruction of complainants' lands for farm or agricultural purposes.

Upper proprietor can not conduct surface water from his land by new channels in unusual quantities on to particular parts of land below him to injury of lower proprietor. Washburn on Easements, 353; *Peck* v. *Herrington*, 109 Ill. 620; *Hicks* v. *Silliman*, 93 id. 255; *Herrington* v. *Peck*, 11 Bradw. 62; *Livingston* v. *McDonald*, 21 Iowa, 160; *Martin* v. *Riddle*, 26 Pa. St. 416; *Waffles* v. *Railroad Co.*, 58 Barb. 413; *Miller* v. *Laubach*, 47 Pa. St. 154; *Butler* v. *Peck*, 16 Ohio St. 416; *Templeton* v. *Vasloe*, 72 Ind. 134; *Dickinson* v. *City of Worcester*, 7 Allen, 19; *Kaufmann* v. *Griesmer*, 26 Pa. St. 407; Cooley on Torts, 577; Washburn on Easements, sec. 209; Wood on Nuisances, 404: Angell on Water-Courses, sec. 108.

Messrs. FOWLER BROS., for the appellee:

As to the right of an owner of the dominant heritage to drain his land by ditches into the natural channel or water-course, and what is a water-course, see *Peck* v. *Herrington*, 109 Ill. 620; *Kankakee Drainage District* v. *Lake Fork Special Drainage District*, 130 id. 265; *Coms. of Highways* v. *Whitsitt*, 15 Ill. App. 323; *Anderson* v. *Henderson*, 124 Ill. 170; *Graham* v. *Keene*, 34 Ill. App. 90.

The same rule in this State applies to surface water as to running streams. *Graham* v. *Keene, supra; Peck* v. *Herrington*, 109 Ill. 611; *Gilham* v. *Madison Ry.*, 49 id. 84; *Gormley* v. *Sanford*, 52 id. 158; *Wagner* v. *Chaney*, 19 Ill. App. 546; *Totel* v. *Benefoy*, 123 Ill. 653; *Anderson* v. *Henderson*, 124 id. 164; *Drainage District* v. *Same* 130 id. 264; *Young* v. *Coms. of Highways*, 134 id. 569.

Damages may be assessed on partial dissolution of an injunction under the statute. R. S., chap. 69, sec. 12; 2 High on Injunctions, sec. 1649; *Darst* v. *Gale*, 83 Ill. 136.

Mr. CHIEF JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in chancery, brought by Menzo Lambert and Hannibal Hill against Joseph Alcorn, to restrain the defendant from putting in a system of tile drains on his own land, and extending the same across certain adjoining land belonging to Mary Wilson, whereby the surface water on the defendant's land would be discharged into a ditch in a public highway, whence it would flow on to and across the lands of the complainants towards a stream known as Indian Creek. The defendant is the owner of a tract of land of somewhat irregular shape, containing about 160 acres, the north line of the tract being the line running east and west through the centres of sections 8, 9 and 10, of a certain township in La Salle county. Adjoining the defendant's land on the west is a tract about 40 rods in width belonging to Mary Wilson. Lambert, one of the complainants, owns a tract of land 80 rods in width east and west, lying immediately west and north of and cornering upon the land of Mary Wilson. Immediately west of Lambert's land is another tract 80 rods in width, also belonging to Mary Wilson, and adjoining that land on the west is the land of complainant Hill. Indian Creek runs some distance to the west of Hill's land. The defendant's land, and the first mentioned tract belonging to Mary Wilson, are bounded on the north by a highway, which runs from a point a considerable distance east of those tracts to a point a few rods west of the south-east corner of Lambert's land, where it terminates in another highway running from the north-east to the south-west, and cutting across Lambert's land near its corner.

The bill alleges that the defendant's land is very wet, and at certain seasons of the year filled with sloughs and ponds; that such sloughs and ponds are the natural receptacles for the most of the surface water falling on the defendant's land; that if left to its natural course, very little, if any, of the surface water would flow to and upon the lands of the complainants;

that their lands are good farm lands and under good cultivation and very valuable; that the defendant is preparing, by means of a tile drain, to drain all of his land upon the lands of the complainants, to their irreparable injury; that the natural course of the water is not to and upon the lands of the complainants, and that it could never reach or damage their lands save by artificial means.

The defendant, by his answer, admits, that some portions of his land are low and wet, but not boggy or swampy; that there are upon portions of his land low basins or natural depressions that, during wet seasons of the year, fill up with water, forming small ponds; that above a certain point or level, such ponds will overflow and pass off from the defendant's land in a westerly or north-westerly course, down through a natural depression in the surface of the land, into Indian Creek; that all the water accumulating on the defendant's land, (except in a designated part of the south-west portion thereof), and except as retained in the natural depressions in the surface of the soil, has so passed off along such draw or natural depression in the surface ever since the original settlement of the country, and before any of the lands were fenced or any ditches or drains were cut through them; that this natural depression in the surface is and for all time has been a natural water-course for the water accumulating on the defendant's land to pass off into Indian Creek; that the water accumulating in some of the ponds on the defendant's land naturally passes off of itself; that in others, the water having no means of escape except by evaporation, percolates through the adjoining land, rendering much of it wet and unfit for cultivation, and rendering the land unhealthy for the defendant and his family; that if the water should be drained off, as it easily can be, the land would become healthy, rich and productive.

The answer further alleges that, in the year 1890, he decided to drain certain portions of his land, and for that purpose, he purchased large quantities of drain tile, and employed com-

petent and skillful persons to lay out drains across that portion of his land along the above natural depression in the surface, west into a similar drain laid along the same natural depression across the land of Mrs. Wilson ; that he had cut a ditch and laid a tile drain from the west line of his land easterly some 50 or 60 rods, when the injunction in this suit was served ; that he intended to extend his tile drain to the east line of his land, and to lay lateral drains south from the main drain on so much of his land as would naturally discharge its waters in that direction, although he had not yet attempted to determine how far the waters would naturally flow in that direction. The answer denies that his proposed drains would work permanent or irreparable injury to the complainants, and denies that he proposed or had attempted to drain the water accumulating on the south-easterly part of his land, above mentioned, into the draw or natural depression running towards the west, and discharging water on to or through the complainants' lands, but, on the contrary, disclaims any intention of ever doing so.

The cause being heard on pleadings and proofs, the court found that the defendant's land is flat and wet, and that there are several ponds thereon formed by natural depressions in the surface ; that in times of heavy rains and melting snows, these ponds fill with water ; that there is a natural depression, slough, swale or draw extending across the defendant's land, except the south-east part thereof, and extending westerly across the lands of both the complainants, and emptying into Indian Creek, wherein surface water from rains and melted snows have always, in a state of nature, passed from the defendant's land, except as above mentioned, across the lands of the complainants to the creek, and when in times of high water these ponds have overflowed, the natural course of the water has been through the same natural draw or water-course to the creek ; that about 50 acres in the south-east part of the defendant's land do not naturally discharge their surface water westerly through this draw or water-course.

The court further found that the material allegations of the bill were not sustained by the proofs, except as to the 50 acres above mentioned, and that the material allegations of the defendant's answer were sustained by the proofs, except as to the 50 acres ; that as to the 50 acres, the equities were with the complainants, and they were entitled to have the injunction made perpetual, but that as to all the other lands of the defendant, the equities were with the defendant, and he was entitled to have the injunction dissolved. A decree was accordingly entered making the injunction perpetual as to the 50 acres, and dissolving it as to the residue of the land, and the defendant was adjudged to pay one-tenth of the witness fees and of the fees of the sheriff for serving subpœnas, and the complainants were adjudged to pay the residue of the costs.

By leave of the court, the defendant filed his suggestions of damages on dissolution of the injunction, and upon the hearing of his suggestions, the court assessed his damages at $338.55, and a decree was thereupon rendered in his favor and against the complainants for that sum.

From the foregoing decree the complainants appealed to the Appellate Court and assigned various errors. The defendant also assigned as a cross-error that portion of the decree making the injunction perpetual as to 50 acres of his land. The Appellate Court overruled the errors assigned by both parties, and affirmed the decree in all respects. The complainants, by a further appeal have now brought the record to this court, and substantially the same errors and cross-errors are assigned here as in the Appellate Court.

The evidence adduced at the hearing is quite voluminous, and relates mainly to the topography of the lands of the complainants and defendant, and of the other lands in that vicinity. Without pausing to state any portion of the evidence in detail, it will suffice for us to say, that we have given it careful consideration, and find that it clearly establishes the following facts : The lands owned by the parties to this suit form a part

21—144 ILL.

of a body or tract of land containing three or four thousand acres or more, lying south and east of Indian Creek, and being almost wholly low, flat and nearly level, and interspersed with small depressions which, in wet weather, are filled with water and become small ponds. The general slope of this land is towards the creek, and there is, and was when the land was in its natural state, a slight depression or swale, running across the northerly side of the defendant's land, and thence across the land owned by Mrs. Wilson to the highway running along the northern boundary of her land and that of the defendant, and thence, in a general direction a little north of west, across the lands of the complainants and other intervening tracts, to the creek. The descent along this swale or depression towards the creek is slight, the elevation of its bed, as shown by measurements in evidence, at the easterly line of the defendant's land being a little less than 30 feet, and at the westerly line a little over 27 feet above the level of the creek. But, as we understand the evidence it is shown with sufficient clearness, that in times of high water, the drainage from all the defendant's land, except about 50 acres in the south-east portion of it, is, and always has been through this depression or swale, over the lands of the complainants and other intervening tracts, into the creek. It does not appear that the current along this depression has ever been sufficiently strong to wash out or form a distinct channel, but the depression is well marked, and sufficient to determine the direction and course of the flow of surface water from the defendant's land.

Some years ago an open ditch was dug on the defendant's land along the course of this depression, for the purpose of carrying off the water from his land more rapidly, and the main tile drain which he was having laid at the time the injunction was served, commenced at the point where the swale or depression in question enters the highway, and run thence, along the line of the open ditch, across the corner of Mrs. Wilson's land, and thence easterly on the defendant's land. The

defendant's scheme of drainage involves the extension of this main drain to the easterly line of his land, and the connection with it of lateral tile drains from the south sufficient to drain his entire land, except the 50 acres above mentioned.

The complainants' contention is, first, that but a small portion of the defendant's land naturally drained towards the west along the depression in question, and that before the construction of artificial ditches, a large portion of the land covered by his proposed system of tile drains found an outlet for its surface waters in other directions. Upon this question the evidence is somewhat conflicting, but after the most mature consideration we have been able to give to it, we are of the opinion that it sustains the finding of the Circuit Court, and shows that all the defendant's land which he is now seeking to drain, when in a state of nature, discharged its surface water through the swale or depression in question into Indian Creek.

But the next, and, as it seems, the principal contention of the complainants is, that to sustain the decree of the Circuit Court, there must have existed on the lands of both the complainants and the defendant, at the time of the commencement of the suit, a connected natural water-course, that is, a well defined channel or canal, having its bed and sides or banks, through which the proposed drainage from the defendant's land on to the lands of the complainants was to be effected; and it is insisted that there was in fact no channel or water-course of that character on the lands of either the complainants or defendant; and if there was, the proposed system of drainage wholly ignores its existence, so far at least as the defendant's land is concerned, the plan being to discharge the surface water from the defendant's land through an entirely new and artificial channel, viz., a tile drain laid several feet beneath the surface of the ground.

One radical fallacy in this contention grows out of the restricted definition sought to be placed by the complainants upon the term " water-course," as applied to the drainage of surface

water from one tract of land on to another. If the conformation of the land is such as to give to the surface water flowing from one tract to the other a fixed and determinate course, so as to uniformly discharge it upon the servient tract at a fixed and definite point, the course thus uniformly followed by the water in its flow, is a water-course, within the meaning of the rule applicable to that subject. Doubtless such water-course can exist only where there is a ravine, swale or depression of greater or less depth, and extending from one tract on to the other, and so situated as to gather up the surface water falling upon the dominant tract and to conduct it along a defined course to a definite point of discharge upon the servient tract. But it does not seem to be important that the force of the water flowing from one tract to the other has not been sufficient to wear out a channel or canal having definite and well marked sides or banks. That depends upon the nature of the soil and the force and rapidity of the flow. If the surface water in fact uniformly or habitually flows off over a given course, having reasonable limits as to width, the line of its flow is, within the meaning of the law applicable to the discharge of surface water, a water-course.

This definition, though not in accordance with the decisions of the courts of some of the other States, is, as we think, borne out by the decision of this court in *Peck* v. *Herrington,* 109 Ill., 611. That was a suit brought by Herrington to restrain Peck and another from draining certain sloughs or small ponds into what was claimed to be a natural water-course or channel on their lands, and extending across the land of Herrington to a stream of water. This water-course consisted, as it seems, of a swale or depression in the land, extending from the vicinity of the sloughs or ponds to be drained to a stream nearly two miles away, and was the channel through which, in its natural state, the surface water was discharged from the lands bordering upon it into the stream. The point was made that such channel was not a water-course within the accepted legal definition. On that point we said:

"It is not denied, as we understand the argument, that the owner of a dominant heritage may, by ditches and drains, drain his own land into the natural and usual channel or water-course, even if the quantity of water thrown upon the servient heritage is increased. But it is said there is no natural water-course here into which the ponds could be drained, and in support of this position we have been referred to *Hoyt* v. *City of Hudson,* 27 Wis., 653, and other like cases in that State, where it is held that a water-course or natural channel is a stream usually flowing in a particular direction, in a definite channel, and discharging into some other stream or body of water, and the term does not include surface water conveyed from a higher to a lower level, for limited periods. It is a sufficient answer to the position taken that the rule established in Wisconsin has never been adopted in this State, but, on the other hand, the same rule has been applied to surface water flowing in a regular channel, as is applied to a water-course."

The facts in the *Herrington* case are, in all their material features, so precisely analogous to those presented by the record now before us, that it is impossible to distinguish between them, and the rule in relation to channels through which surface water only is accustomed to flow laid down in that case, is equally applicable here.

The point that the proposed system of drainage is in fact an abandonment of the natural water-course, if one ever existed, is scarcely worthy of serious consideration. It assumes that a natural water-course, if used at all, must be used in its natural state, and is therefore incapable of improvement, either by being deepened or widened by artificial means, or by the construction along its course of a channel or drain beneath the surface, for the purpose of more effectually carrying off the surface water from the land. Or the assumption seems to be, that the construction of such improvements creates a substantively new water-course, in no way dependent upon the one provided by nature, and carrying with it none of the rights

arising from the existence of the former. It is sufficient to say, that both common sense and the uniform decisions of this court are the other way. In the *Herrington* case, it appeared in proof that an artificial ditch had been dug along the bed of the natural water-course, deepening and straightening it and removing intervening obstructions out of the way, and it was not supposed that the original channel and all rights appertaining to it were thereby abandoned. It remained and was treated as constituting the same water-course it was before, and the defendant was held entitled to drain the surface water from his land into it in its improved condition.

The right of the owner of the dominant estate to drain his land, although the amount of water cast upon the servient land be increased, was stated in *Dayton* v. *Drainage Commissioners*, 128 Ill., 271, as follows: " The rule undoubtedly is, that the owner of a higher tract of land has the right to have the surface water falling or naturally coming upon his premises by rains or melting snow pass off through the natural drains upon or over the lower or servient lands next adjoining, and the owner of the dominant heritage has the right, by ditches and drains, to drain his own land into the channels which nature has provided, even if the quantity of water in that way thrown upon the next adjoining lower lands is thereby increased. But the owner has no right to open or remove natural barriers and let on to such lower lands water which would not otherwise naturally flow in that direction. That would subject the servient heritage to an unreasonable burden which the law will not permit, and against which the owner ought reasonably to have protection." The rule of law thus stated is perfectly well settled, as also appears from the following decisions: *Anderson* v. *Henderson*, 124 Ill., 164; *Young* v. *Commissioners of Highways*, 134 id., 569; *Drainage District* v. *Drainage District*, 130 id., 261; *Hicks* v. *Silliman*, 93 id., 255; *Peck* v. *Herrington*, *supra*.

We are of the opinion that this rule has been properly applied in the present case. The fair result from all the evidence is, that the defendant's land as to which the injunction is dissolved, is all within the territory, the natural drainage of which is in the direction of the water-course running westerly to Indian Creek. It is true there may be slight elevations in the surface of the earth, preventing the outflow of the surface water and keeping it back in the form of sloughs or ponds, but the evidence is clear that when those ponds are so filled with water as to overflow, the course of the overflow is towards and along the water-course in question. As was said in *Anderson v. Henderson, supra,* "It is a matter of common observation, that needs no proof to establish the fact, that ponds situated on uplands, as they are frequently discovered to exist, are surrounded by what may properly be called a rim, with a slight depression at some point, over which the water escapes when more flows in from the higher lands than the basin will naturally contain. That is its natural outlet." And as the evidence shows that when the ponds in question are so full as to run over, the surplus water runs off through the water-course leading to Indian Creek, it is clear that the drainage from these ponds is in that direction.

Since the decision by this court of the case of *Peck* v. *Herrington,* the Legislature has enacted a law, embodying substantially, in statutory form, the rule established in that case. Section 4, of the "Act to provide for drainage for agricultural and sanitary purposes, and to repeal certain acts therein named," in force July 1, 1885, is as follows :

" Owners of land may drain the same in the general course of natural drainage, by constructing open or covered drains, discharging the same into any natural water-course, or into any natural depression, whereby the water will be carried into some natural water-course, or into some drain on a public highway with the consent of the commissioners thereto ; and when such drainage is wholly upon the owner's land, he shall not be liable in damages therefor to any person or persons or corporation."

Under this statute, the land-owner draining his own land, may drain it "in the general course of natural drainage," and discharge the water "into any natural water-course," or "into any natural depression whereby the water will be carried into some natural water-course." The system of drainage contemplated by the defendant, and which the bill was brought to restrain, comes clearly within the provisions of this statute, as well as within the rules established by the decisions of this court.

Complaint is made of the assessment of damages in favor of the defendant on dissolution of the injunction. It is not contended that damages may not properly be awarded a defendant on a partial dissolution of an injunction, this court having expressly sustained assessments of that character. *Walker* v. *Pritchard*, 135 Ill., 103; *Brackbush* v. *Dorsett*, 138 id., 167.

The objection to the assessment of damages is, that it is not supported by the evidence. The amount of the damages awarded is $338.55. The evidence shows, and the decree finds, that the defendant had become bound to pay, as his reasonable solicitors' fees in and about the defense of the suit, and in obtaining a dissolution of the injunction, the sum of $300, and had paid and become bound to pay for the necessary fees and charges of a civil engineer to make a survey and determine the elevation and levels of the land in controversy, and in making necessary plats to be introduced in evidence on the trial of this suit, the further sum of $76.16. The decree found that these fees and expenses were reasonable and necessary, and that the defendant ought to recover of the complainants nine-tenths thereof, making the sum of $338.55 above mentioned.

We find no basis in the evidence for an apportionment of these fees and expenses in the manner indicated, unless it be that upon which the taxed costs of the suit were apportioned between the parties in the same ratio, and that seems to have been because the final decree was in part only in favor of the

defendant, the injunction being made perpetual as to 50 acres of his land. If this be true, the manifest intention of the court was to assess as damages the entire cost of defending the suit, to the extent to which the defense was successful. The solicitors' fees shown by the evidence are the total fees of the defendant's solicitors for their entire services in defending the suit. There is evidence that a motion for a dissolution of the injunction was made, though, on account of the illness of the Judge, it seems to have been but partially heard and never decided. The record before us affords abundant evidence that the principal part of the services rendered by the defendant's solicitors were in the general defense of the suit and particularly upon the final hearing. This is shown by the great volume of testimony adduced and the great number of witnesses produced and examined at the hearing. But the evidence wholly fails to distinguish between the services rendered in relation to the motion to dissolve, and those rendered in the general defense of the suit, and there is nothing, so far as we are able to see, from which the value of the services directed solely to the object of obtaining a dissolution of the preliminary injunction can be determined.

The rule is, that a defendant may recover, as damages on dissolution of an injunction, the solicitor's, fees which he has paid or become obligated to pay, for services rendered in obtaining a dissolution of the injunction, but not those rendered in the general defense of the suit. *Jevne* v. *Osgood,* 57 Ill., 340 ; *Alexander* v. *Colcord,* 85 id., 323 ; *Field* v. *Mendenwald,* 26 Ill. App., 642 ; *Gerard* v. *Gateau,* 15 id., 520. In *Alexander* v. *Colcord, supra,* it was held to be serious objection to the evidence in support of a suggestion of damages of this character, that it made no discrimination between services rendered in the case generally, and services which were strictly necessary to procure a dissolution of the injunction. That discrimination not being made in this case, there is no evidence upon which the assessment of damages can be based.

It follows that the portion of the decree relating to damages can not be sustained.

Perhaps the view was entertained by court and counsel at the time of the assessment of damages, that as the only relief sought by the bill was an injunction, the entire defense was virtually directed to the sole object of procuring a dissolution of the injunction, and therefore that all the services rendered in the case must be deemed to have been rendered for that purpose. The relief sought by the bill was a *perpetual* injunction restraining the defendant from laying his proposed tile drain, and an injunction *pendente lite* was a mere ancillary writ which the complainant was at liberty to apply for or not as he saw fit. Its only office was to preserve the *statu quo* until a final hearing could be had. The complainants might have prosecuted their suit without asking for a preliminary injunction, and if the defendant had proceeded to construct his drains during the pendency of the suit, he would not have been in contempt for disobedience to a writ it is true, but he would have acted at the risk of having his acts *pendente lite* declared illegal, and of being compelled to restore everything to the condition in which it was at the commencement of the suit. In a litigation of this character, the services rendered in the general defense of the suit are as clearly distinguishable from those rendered for the mere purpose of getting rid of an injunction *pendente lite*, in case one has been issued, as they are in cases where relief of a different character is sought.

We are of the opinion that the cross-error assigned by the defendant should be sustained. The bill charges that the defendant intended and was about to drain all his land across the complainants' property by means of his proposed system of tile drains. The defendant, by his answer, denies and expressly disclaims any intention to drain the 50 acres as to which the injunction was made perpetual, in that manner. As to the issue thus formed, the burden of proof was clearly with the complainants, and in the absence of proof sufficient to show,

at least *prima facie*, that the allegations of their bill were true as to that land, they were entitled to no decree. The only witness by which they sought to make that proof was the defendant himself, and while his answers are not in all respects clear and satisfactory, they certainly fail to establish affirmatively the allegations of the bill as to the 50 acres. He denies that he has determined or intends to drain that portion of his land, but leaves the impression that that is true for the reason that he has not yet considered that subject. If the burden was on him to prove the truth of his answer, perhaps a different result might be drawn from his testimony. But as the burden is on the complainants, we are satisfied that the defendant's testimony does not furnish the affirmative proof required to entitle them to a decree. As neither party, however, has litigated the defendant's right to extend his tile drains on to or over the 50 acres on its merits, the bill, as to that portion of the defendant's land should be dismissed without prejudice. The complainants should also be required to pay all the costs in the Circuit Court.

The decree dissolving the injunction and dismissing the bill as to all the defendant's land except the 50 acres will be affirmed. That portion of the decree awarding the complainants a perpetual injunction as to the 50 acres will be reversed, with directions to the Circuit Court to dissolve the injunction and dismiss the bill as to that portion of the defendant's land, without prejudice. That portion of the decree awarding the defendant damages upon dissolution of the injunction will be reversed, and the cause will be remanded to the Circuit Court, for such further proceedings as to justice and equity may appertain, not inconsistent with this opinion. The decree as to costs will be so modified as to require the complainants to pay all the costs in the Circuit Court. The defendant will be required to pay one-fourth and the complainants three-fourths of the costs in this court and also in the Appellate Court.

*Judgment affirmed in part and in part reversed.*