## William R. Wills v. Thomas Babb, et al.

1.  LEVEE—*when injunction does not lie to restrain construction and repair of.*  Injunction does not lie to restrain the owner of the dominant heritage from constructing and repairing a levee, the result of

which levee will be to drain the lands of the parties so constructing the same into a channel provided by nature, nor is the fact material that by virtue of such levee the quantity of water turned upon the lands of the party seeking the injunction will be increased.

2.  CO-COMPLAINANT—*discretionary with chancellor to deny leave to become.*  Where a case has been submitted to a chancellor and has been by him taken under advisement, it is within his discretion to grant or deny leave to an intervenor to become a co-complainant.

Bill for injunction.  Appeal from the Circuit Court of Pike County; the Hon. HARRY HIGBEE, Judge, presiding.  Heard in this court at the May term, 1905.  Affirmed.  Opinion filed November 24, 1905.

MATTHEWS & ANDERSON and JEFFERSON ORR, for appellant.

EDWARD DOOCY, WILLIAMS & WILLIAMS, and P. F. GROTE, for appellees.

Mr. JUSTICE BAUME delivered the opinion of the court.

This is a bill in equity by appellant to enjoin appellees, Thomas Babb and Claib L. Cook, from constructing a certain levee on their lands to prevent flooding of the same by surface waters, whereby it is alleged such surface waters will be deflected and made to flow upon the lands of appellant, inflicting irreparable injury.  A temporary injunction was granted, upon the filing of the bill.  Thereafter, appellees having filed their motion to dissolve the injunction, and their several answers to the amended bill filed by appellant, the cause was heard by the chancellor and a decree entered dissolving the injunction and dismissing the bill for want of equity.

Appellant and appellees, Babb and Cook, are and have been since 1902 the owners of farm lands in township 5 south, range 7 in Pike County, within the boundaries of the Sny Island Levee Drainage District, composed of reclaimed lands lying between the east bank of the Mississippi river and the bluffs east of said river.  Appellant owns the south half of section 14 and 180 acres in the north half of section 23; appellee Babb owns the north half and the southeast quarter of section 10; and appellee Cook owns the south half of section 3.  The following plat shows, approximately,

the relative location of the several tracts of land and the
main water courses, levees, etc., thereon :

Hadley creek, which enters the territory involved from
the bluffs on the east, at the northeast quarter of section 1,
is the main channel affording drainage of the lands into
Sny ditch, the common outlet of all the surface waters.
The original and natural course of Hadley creek is indi-
cated by the channel designated, "Old Hadley Creek."
From time immemorial the waters of the creek overflowed
its banks in freshets, and were distributed indiscriminately
over the adjoining lands, principally to the south and south-

west. In 1860, when Daniel Caffrey owned the northeast
quarter of section 1, a levee had been constructed north
and west of the bend in the channel of Hadley creek, on
that quarter section, to prevent overflow at that point.
This levee remained intact until 1869, when it was destroyed
by an extraordinary freshet. It was immediately rebuilt
and so remained until 1875, when it again gave way. It
was again repaired and so remained until 1883, when it
was broken by another freshet, which also cut away the
west bank of the creek, at the point on the plat designated
" Caffrey Gap," and thus opened a channel at that point.

In 1883 the Boyd Levee District was formed, but what
territory was included within the boundaries of that dis-
trict, does not appear. The commissioners of that dis
trict, for the purpose of preventing overflow of the creek
to the east, constructed a levee along the east bank of the
creek to the north line of section 12, and subsequently, in
September, 1883, purchased from Caffrey a strip of land 200
feet wide and a quarter of a mile long, for a new channel
for Hadley creek, from the bend southwesterly. The new
channel was excavated to the north line of section 11, and
it was proposed to extend the same still further in a south-
westerly direction to a junction with Jack Slough, but upon
the protest of the owner of the land in section 11, the work
was stopped and never resumed. For several years after
the new channel was cut, the water in Hadley creek, at an
ordinary stage, continued to flow in the old bed in a south-
erly direction, but owing to the accumulation of drift and
material thrown in the old channel, beginning at a point
about half a mile south of the Caffrey Gap, the flow of the
water was obstructed, and thereafter the old channel con-
tinued to fill further south to such an extent that portions
of its old bed in section 12 carried no water whatever,
except in times of freshet, and were used for farming pur-
poses. It is clearly established by the evidence that from
the construction of the new channel to the present, the
waters flowing therein in times of freshets when discharged
at its mouth on the north line of section 11, did not there-

after flow in any defined course, having reasonable limits as to width, but were spread in fan shape to the northwest, west, southwest and south.   It is also clear that the levees, constructed by Miller in section 1, by Likes in section 12 and by Atkinson in section 11, all on the east and south sides of the new channel, although not all intact, contributed appreciably to obstruct the flow of the water to the east and south and in turning it to the west and northwest.   To prevent the surface waters, discharged at the mouth of the new channel in times of freshet, from overflowing the lands in the southwest quarter of section 3 and the north half of the northeast quarter of section 10, the then owner of said lands, in 1891, constructed a levee thereon west of the highway.   This levee, designated on the plat "Old Levee to be repaired," was from three to four feet in height when constructed, but for some time before the filing of this bill the flow of water had broken and washed it out in places.   In October, 1903, appellees were proceeding to repair the old levee on the east line of sections 3 and 10 and construct a new levee beginning at a point on the same line, forty feet north of the bridge crossing Grubb Slough, thence north to a junction with the old levee.   The entire levee when constructed and repaired was to be a mile and a quarter in length, from three to four feet in height and to have a ditch on either side emptying into Grubb Slough, one on appellees' lands west of the levee and the other on the highway east of the levee, for the construction of which latter ditch appellees had secured the consent of the highway commissioners.   The bill alleges that the construction and repair of this levee by appellees will deflect surface water naturally and of right flowing on their lands in times of freshet, on the lands of appellant in section 14, to the irreparable injury of said lands, and the prayer of the bill is that appellees be permanently enjoined from constructing and repairing such levee.

The contention of appellant that the waters of Hadley creek have flowed over and upon the lands of appellee for more than twenty years, with the acquiescence of appel-

lees and their grantors, and that appellees are therefore estopped from preventing the flow of such waters on their lands, is not sustained by the evidence in the record. It does not appear that the waters overflowing the banks of Old Hadley creek in ordinary freshets, went on the lands belonging to appellees until after the construction of the new channel to the north line of section 11, in 1884, or 1885.

Appellees commenced the work now sought to be enjoined in October 1903. Furthermore, prior to that time, in 1891, the then owner of appellees' lands had entered his protest against the turning of the surface waters so that they flowed on said lands, by constructing the levee now sought to be repaired. True, the lands now owned by appellees were flooded to some extent by the waters overflowing the banks of Old Hadley creek and washing out the levee, heretofore mentioned, in 1869, 1875, and 1883, but these were occasions of extraordinary freshets.

It is also contended by appellant that if the building of the Boyd levee in section 1 on the east bank of Old Hadley creek, or the purchase of the Caffrey strip and cutting of the new channel, had the effect of overflowing appellees' lands, they cannot complain, because, as the Boyd Levee District was organized under the drainage laws of Illinois, it must be presumed as a matter of law that the owners of the lands now belonging to appellees were fully compensated for damages resulting from such overflow. So far as the very meager evidence on the subject shows, the commissioners of Boyd Drainage District contemplated cutting a channel from the Caffrey gap in section 1 to Jack Slough in section 15, as a substitute for Old Hadley creek as a watercourse. If the channel had been cut as contemplated, in all probability no injury would have resulted to appellees' lands by overflow in ordinary freshets, against which appellees only seek to protect themselves.

When, however, the commissioners, because of the mere protest of the then owner of lands in section 11, stopped the work at the north line of that section, and provided no

other or further outlet for the waters of Hadley creek, it is clear they were not assuming to act by virtue of any authority under the statute, to take the land for the purposes of cutting a channel for drainage. The conduct of the commissioners and the character of the work done by them precludes the presumption that any injury was contemplated as resulting to the lands now owned by appellees, and that the owners of said lands were compensated.

The evidence tends to show that the water at ordinary stage discharged at the mouth of the new channel, at the north line of section 11, flowed south and southwest through section 11, in three somewhat well-defined courses, as indicated on the plat. That the water discharged at that point naturally and ordinarily followed those courses, is also evidenced by the fact that the Atkinson levee was constructed for the purpose of turning such water westward into Grubb Slough. The evidence also tends to show that the general course of natural drainage of the territory lying to the east and northeast, is to the south and southwest, into Grubb Slough, Jack Slough and the low lands designated Elm Flats lying between these two sloughs; and that there are ravines, swales and depressions in these low lands which serve as water courses for the surface waters flowing thereon from the lands above.

The contention of appellant that the construction and repair of the levee in question will change or obstruct a natural watercourse for surface water on appellees' lands and create a new watercourse to the south whereby additional surface water will be cast on appellant's lands, is not sustained by the record. While the definition of a watercourse as " a natural stream of water flowing in a definite channel, having a bed and banks or sides, and discharging itself into some other stream or body of water," has not been adopted in this state as applicable to surface water (Peck v. Herrington, 109 Ill. 611), it has been uniformly held that to constitute such a watercourse, the surface water must in fact habitually flow off over a given course, having reasonable limits as to width. Lambert v.

Alcorn, 144 Ill. 313; Ribordy v. Murray, 177 Ill. 134. It was, however, said in Lambert v. Alcorn, *supra:* "Doubtless such watercourse can only exist where there is a ravine, swale or depression of greater or less depth, and extending from one tract on to the other, and so as to gather up the surface water falling upon the dominant tract and to conduct it along a defined course to a definite point of discharge upon the servient tract."

A watercourse, therefore, necessarily implies a course having some ascertainable limits or boundaries within which the water habitually flows. Tested by this rule, the levee proposed to be constructed and repaired by appellees will not obstruct or deflect the surface water flowing on to their lands in any watercourse from the lands on the east. The lands adjoining appellees' lands on the east are not appreciably higher or lower than appellees' lands, and within the line of the proposed levee there is no ascertainable watercourse on appellees' lands.

The purpose of appellees in constructing and repairing the proposed levee is to turn the surface water coming upon their lands, by reason of the change in the channel of Hadley creek, and the construction of the levees on the east and south sides of the new channel, so that the same will flow into Grubb Slough. Grubb Slough is located on land belonging to appellee Babb immediately south of the proposed new levee, and is conceded to be a natural watercourse into which the waters flowing from the lands to the east and north are habitually discharged.

By the rule of the civil law, in force in this state, the owner of the dominant heritage has a natural easement over the land of the servient heritage for the flow of the surface waters, and, also, the owner of the servient heritage cannot interfere with or divert the flow of surface water in the watercourses to the injury of the dominant heritage. Gormley v. Sanford, 52 Ill. 158; Pinkstaff v. Steffy, 216 Ill. 406. But in this case, appellant cannot invoke that rule, because he is not the owner of the dominant estate.

Appellant's lands are situate three-fourths of a mile south of the proposed levee, and are not next adjoining the lands belonging to appellees, but if they were next adjoining appellees' lands we apprehend that appellees, as the owners of the dominant estates, would have the right, by ditches and drains, to drain their lands into a channel provided by nature, even if the quantity of water thereby thrown upon the lands of appellant was increased. Dayton v. Drainage Commissioners, 128 Ill. 271. This right of appellees is also expressly recognized by section 4, chapter 42, Hurd's Statutes (1903) page 739, which provides that, "Owners of land may drain the same in the general course of natural drainage by constructing open or covered drains, discharging the same into any natural watercourse or into any natural depression, whereby the water will be carried into some natural watercourse or into some drain on a public highway, with the consent of the commissioners thereto, and when such drainage is wholly upon the owner's land, he shall not be liable in damage therefor to any person or persons or corporations."

As the construction and repair of the levee in question will not interfere with or obstruct any natural watercourse, and it appearing that the effect of such levee will be to turn the surface waters flowing on appellees' lands into a natural channel on their own lands, we are of opinion that appellant cannot enjoin the construction and repair of such levee by appellees.

If, however, it should be held that appellant is entitled to the relief prayed in his bill upon making proof of its allegations, it being established by the evidence that appellees are abundantly able to respond in damages for any reparable injury resulting to appellant by the construction and repair of the levee in question, the only ground for relief available to him is, that the resulting injury will be irreparable in its nature. Upon this issue, after a careful consideration of the voluminous and conflicting evidence in the record, we are content to abide the conclusion of the chancellor, who saw and heard the witnesses testify, that

appellant failed satisfactorily to establish his claim of irreparable injury.

After the cause had been submitted to the chancellor, and he had taken the same under advisement, and after he had announced his conclusion therein, one W. W. Salisbury, with the consent of appellant, filed his verified petition setting up that he would suffer irreparable injury by the construction and repair of the levee in question, and asking that he be allowed to intervene as a co-complainant with appellant, which petition was denied. It is urged that the denial of such petition was error. The action of the chancellor upon such petition was, under the circumstances, clearly within his discretion, and we are of opinion that such discretion was properly exercised in denying the same. Booth v. Wiley, 102 Ill. 84; Fairbanks v. Farwell, 141 Ill. 354.

The decree of the Circuit Court is affirmed.

*Affirmed.*