### HINES, Director General of Railroads, v. WOODSON.

(Circuit Court of Appeals, Seventh Circuit. January 17, 1922.)

No. 2964.

1. **Railroads 🌑5½, New, vol. 6A Key-No. Series—No liability without previous notice for obstruction of stream by predecessor in title.**

The Director General of Railroads *held* not liable for flooding of land alleged to be due to obstruction of a stream by a bridge built by a railroad company many years before he took control of its operation, and of the improper construction of which he was not given notice.

2. **Railroads 🌑108—Change of bridge over water course held not required by statute.**

Hurd's Rev. St. Ill. 1917, c. 114, § 20, requiring railroad companies to restore water courses which their roads follow or cross to their former state, and to construct such culverts or sluices as the natural lay of the land requires for proper drainage, *held* not to require the Director General of Railroads to change the construction of a bridge built by the railroad company before the statute was enacted, and which also, under the conditions existing when it was built, conformed to the requirements of the statute.

3. **Waters and water courses 🌑168—Prescriptive right gives no right to require change.**

The fact that owners of land constructed an artificial channel through which water flowed under a bridge previously built by a railroad com-

🌑For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

pany and maintained it for more than 20 years gave them a prescriptive right, if at all, only in the use of the channel in its then condition and no right to require the bridge to be altered.

In Error to the District Court of the United States for the Southern Division of the Southern District of Illinois.

Action at law by Orion A. Woodson against Walker D. Hines, Director General of Railroads. Judgment for plaintiff, and defendant brings error. Reversed.

Defendant in error, herein called plaintiff, for 13 years part owner of a 10-acre tract of land and lessee for the same time of the land of the coplaintiff (dismissed out of this case), obtained a judgment against plaintiff in error, Director General of Railroads, herein called defendant, on the charge that defendant had wrongfully and illegally caused to be placed and maintained within the channel of a natural water course two bridges, by reason whereof the timber and piling parts of said bridges caught driftwood, etc., thereby obstructing the natural flow of the water, so that it overflowed and injured plaintiff's crops. The Wabash Railway Company was also made a defendant, but was dismissed from the case by plaintiff.

The general course of the Keokuk line of the Wabash Railroad from Bluffs, in Scott county, Ill., to bridge 277A, the most easterly of the two bridges complained of, was substantially east and west. The natural flow of all waters in that vicinity was from the north and northeast to the south and southwest, and the railroad, probably at the time of its construction, built, as a part of its road, bridge 500, one of the bridges complained of, just east of Bluffs, and made numerous other openings for the passage of the water to the south. Wolf creek, originating in the territory north and east of Bluffs, passed unobstructed through bridge 500 to the south and west, and it is conceded that no injury accrued to plaintiff from that bridge. This is important because it is the only bridge covered by the declaration built over a natural water course, and with that bridge out of the case there is no complaint or evidence that the openings in the roadbed, as it was originally built, were not and had not at all times since been sufficient to permit the escape of the waters from north of the railroad to the south.

Bridge 277A, which it is claimed caused the damage suffered by plaintiff, was built in 1888, and was supported by abutments at each end and by three bents, or wooden piling, one in the middle and the others about 16 feet either side of the middle, and the bridge has been maintained in that position and condition ever since its construction. Before the building of that bridge there probably had been an opening or passageway for cattle, through which no water passed, unless at times some surface water passed toward the south.

The evidence shows that Wolf creek, passing through bridge 500, followed down the south side of the railroad to a point some 600 to 1,000 feet from the point where bridge 277A was afterwards placed, and there it emptied off into the swamp southwest of the railroad and over the land in question in this case.

Bridge 277A was built by the Wabash Railroad on the request of the former owner of plaintiff's land and the owners of other lands, as a part of their plans to reclaim their lands from overflow. A year after 277A was built the landowners made a channel under the bridge and along the south side of the right of way towards the west, and also built on the south thereof a low levee, so that the waters from Wolf creek, instead of overflowing their lands, were carried through the channel to and under the bridge. That part of the channel made along the south side of the right of way of the railroad was so made that it was necessary to make a right angle turn to get under the bridge. The bridge was made some 10 feet longer than was asked for by the property owners, and the three bents above mentioned were placed at an angle from northwest to southeast, so as to facilitate the flow of the water. In addition to the fact that the evidence shows the bridge to have been properly constructed and adequate for all known purposes when built, the evidence also shows no complaint whatever, by anybody, then or since, except that in 1919 brush,

plank, poles and a variety of driftwood were caught by the bents, so that the passage of the water was stopped and backed up, from which the overflow resulted. This is the injury for which recovery is sought.

There is some evidence in regard to the levee, wholly uncontradicted, that is important in this case, and it is that from a point 200 to 250 yards northwest of bridge 500 down to bridge 277A there was, 30 years ago, a small levee, which was built higher at different times since then. There is no evidence that shows whether the process of building up was completed more than 20 years ago or not, but it does appear that in 1919 the levee had been raised to such a height in places that, if there was sufficient water, and the levee held, the water would go over the top of the Wabash rails.

While the plaintiff testified that it does not take much of a rain for the débris, rubbish, and driftwood to accumulate at bridge 277A and stop the flow entirely four or five times in a season, yet it does not appear that plaintiff's crops were damaged at any time except in 1919, the year in question. On the other hand, the plaintiff testified that he raised some corn, wheat, and alfalfa on this land every year when it was not too wet to put them in, and that there had never been a season since he had been there that the rain had bothered it over an hour or two. The carrying capacity of the ditch, by reason of the closeness of the levee to the railroad embankment, grew smaller as the artificial channel approached bridge 277A, so that at a point near 277A the area was only about one-third of what it was to the west near bridge 500, and in addition to this, at various points across the channel there were barbed wire fences and rail fences, and at one point the plaintiff had constructed a bridge of planks and poles to enable him to pass from his land over the top of the levee and across the railroad track, which bridge at the time of the overflow in question was carried away and lodged against bridge 277A, contributing its part to whatever stoppage there was at the bridge.

From these facts several questions are presented upon various assignments of error, but defendant, at the close of all the evidence, made a motion to instruct the jury to return a verdict for the defendant, which motion was denied. Error was assigned on this refusal of the court, and, as such a motion raised every legal objection to a recovery by the plaintiff on the pleadings, evidence, and law, we consider the questions as arising under that motion.

Walter Bellatti, of Jacksonville, Ill., for plaintiff in error.

Oscar J. Putting, of Springfield, Ill.; and John A. McKeene, of Winchester, Ill., for defendant in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge (after stating the facts as above). [1] 1. Defendant contends that the Director General of Railroads neither built the bridge nor had any notice of its insufficiency, and therefore cannot be held liable for damages. We are of opinion that the courts of Illinois have determined this question in accordance with defendant's contention.

Plaintiff's urge is that in Groff v. Ankenbrandt, 124 Ill. 51, 15 N. E. 40, 7 Am. St. Rep. 342, the only question was the sufficiency of one count of the declaration, which did not allege that defendant erected the levee. In this, we think that counsel is in error. What the court said was:

"Inasmuch as the count does not state that the levee or embankment was erected by the defendant or originally placed by him where it is, it will be presumed that such levee or embankment was already upon the land when the defendant became possessed of it, and that consequently he was only responsible for allowing the obstruction to remain as it was when the premises came into his hands."

The court further said:

"Where a party comes into possession of land, as grantee or lessee, with an existing nuisance upon such land, and he merely permits the nuisance to remain or continue, he cannot be held liable in an action for damages until he has been first notified or requested to remove the nuisance."

In Tetherington v. St. Louis, Troy & Eastern R. Co., 226 Ill. 129, 132, 133, 80 N. E. 697, 699 (12 L. R. A. [N. S.] 571), the Supreme Court reaffirmed the holding in the Groff Case, but held that authority not applicable to the facts in the Tetherington Case. After quoting the Illinois statute (Hurd's Stats. 1917, c. 114, § 20) relied on in this case by plaintiff, the court said:

"This section, we think, changed the rule of law with reference to nuisances as held in the Groff Case, supra—at least in so far as applied to railroads constructed after the passage of the act."

The Tetherington Case can have no application here, because it there appeared that the embankment was built by the original company, in violation of the express terms of the act, in that it failed and neglected to construct necessary culverts and sluices to protect the adjoining owners against overflow, whereas in the case at bar the proofs show that all necessary openings were made so as not to obstruct the natural flow of the waters, and that the bridge in question, when built by the Wabash Railroad, many years before the Director General had anything to do with it, was constructed pursuant to the request of property owners, and was much more than sufficient to meet all of the then contemplated requirements as a new artificial water course; and, too, it was built long prior to the enactment of the statute of 1891.

The District Court of Indiana cited with approval the Groff Case in Central Trust Co. v. Wabash, St. L. & P. Ry. Co. (C. C.) 57 Fed. 441. The latter case was quoted from and approved in Phila. & R. R. Co. v. Smith, 64 Fed. 679, 682, 12 C. C. A. 384, 27 L. R. A. 131 (3d C. C. A.). In 1916 the Eighth Circuit Court of Appeals, in Union Pac. R. Co. v. Campbell, 236 Fed. 708, 711, 150 C. C. A. 40, cited and approved the Smith Case and Central Trust Co. Case, supra.

[2] 2. Was there any obligation upon the defendant to in any manner alter or change the bridge under the circumstances shown in the evidence? In the Tetherington Case, supra, the court not only reaffirmed the doctrine of the Groff Case, but in its construction of the statute of 1891, above cited, said that the effect of that act was to change the law with reference to nuisances, as held in the Groff Case, in so far as applied to railroads constructed after the passage of the act.

Before the Tetherington Case, decided in 1907, Wabash R. Co. v. Sanders, 47 Ill. App. 436, was decided in 1893, and the court there said, referring to the statute of 1891:

"This section shows that it applies to roads constructed after that act went into effect."

Renner v. St. Louis, Iron Mt. & S. Ry. Co., 197 Ill. App. 11, decided in 1915, is to the same effect.

It is not thought that the statute of 1891 can have any influence on this case. Authority is thereby given to a railroad to construct its railway across, along, or upon any stream of water or water course, but requires that it shall restore the stream or water course to its former state, or to such state as not unnecessarily to have impaired its usefulness. Inasmuch as the water course in question in this case did not exist when the bridge in question was constructed, there was no stream of water or water course to restore. The further provision "that in no case shall any railroad company construct a roadbed without first constructing the necessary culveı ts or sluices as the natural lay of the land requires for the necessary drainage thereof" cannot possibly apply to this case, because there was no natural lay of the land at the point of bridge 277A that required or made necessary any bridge to carry water toward the north. It necessarily follows that all of those cases, like the Tetherington Case, supra, Ramey v. B. & O. S. W. R. Co., 235 Ill. 502, 85 N. E. 639, and many like cases decided under the statute of 1891, or under some special charter requirement of like character, or under a common-law obligation not to erect and maintain a nuisance, can have no bearing on this case, for the reasons above given, and also for the further reason that the bridge, when it was constructed, was not a nuisance that was in violation of the rights of plaintiff or any one else. On the contrary, it seems to have been built for the sole accommodation of the property owners, of whom a remote grantor in the chain of plaintiffs' title presumably was one. At least the record shows that that land before that time was low, swampy land, overflowed by the water which subsequently passed through bridge 277A. No statutory or common-law obligation devolved upon the Director General.

[3] Great stress is laid upon the averment and claim that the water flowing under bridge 277A became, after a lapse of 20 years, a natural water course, and also gave the plaintiff and other property owners prescriptive rights.

In Ribordy v. Murray, 177 Ill. 134, at page 140, 52 N. E. 325, 327, a water course is described as follows:

"If the conformation of the land was such as to give the surface water flowing from one tract to another a fixed and determinate course, so as to uniformly discharge it upon the servient tract at a fixed and definite point, the course thus uniformly followed by the water in its flow is a water course, within the meaning of the rule applicable to this class of cases. Lambert v. Alcorn, 144 Ill. 313."

In Lambert v. Alcorn, 144 Ill. 313, 324, 33 N. E. 53, 56 (21 L. R. A. 611), supra, the court added:

"Doubtless such water course can exist only where there is a ravine, swale, or depression of greater or less depth, and extending from one tract on to the other, and so situated as to gather up the surface water falling upon the dominant tract and to conduct it along a defined course to a definite point of discharge upon the servient tract."

Plaintiff relies upon Broadwell Drainage Dist. v. Lawrence, 231 Ill. 86, 99, 83 N. E. 104, 108, in support of his contention that the water as it flowed under the bridge was a natural water course. All that that

case held is that, if an artificial channel has been made to serve as a permanent channel, and the flow of water is continued for the period of prescription, owners of land through which it flows may acquire the right to use the artificial channel as if it were a natural stream. That much admitted, it does not follow that it is a natural water course. After quoting from many authorities, the court quotes from Washburn on Easements language which it accepts as the general principle underlying all such cases:

"Where one who owns a water course in which another is interested or by the use of which another is affected does or suffers acts to be done affecting the rights of other proprietors whereby a state of things is created which he cannot change without materially injuring another who has been led to act by what he himself had done or permitted, the courts often apply the doctrine of estoppel, and equity, and sometimes law, will interpose to prevent his causing such change to be made."

Even if it appears that property owners, including the plaintiff, gained some prescriptive right in the flow of the water under bridge 277A, the underlying principle stated by Washburn and adopted by the Illinois courts is based upon the proposition, not that either party may be compelled by the other to make changes, but that the existing conditions must continue without change. In C., B. & Q. R. Co. v. Ives, 202 Ill. 69, 66 N. E. 940, the court said:

"In order that a way may be established by prescription the use and enjoyment thereof must have been adverse, under a claim of right, exclusive, uninterrupted, and with the knowledge and acquiescence of the owner of the land in or over which the easement is claimed, for the period of twenty years. Rose v. City of Farmington, 196 Ill. 226. A mere permissive use never ripens into a prescriptive right. Washburn on Easements, p. 132."

The Indiana Court of Appeals, in McCaslin v. State, 38 Ind. App. 184, 75 N. E. 844, said:

"In Worthley v. Burbanks, 146 Ind. 534, 45 N. E. 779, it is said that, in order to constitute adverse possession, five indispensable elements must appear: '(1) It must be hostile and under a claim of right; (2) it must be actual; (3) it must be open and notorious; (4) it must be exclusive; (5) it must be continuous.' In support of this rule the court cites numerous authorities. In Peterson v. McCullough, 50 Ind. 35, the court said: 'To acquire a right by prescription, there must be an actual enjoyment. Prescription acquires for the party precisely what he has possessed, and nothing more, and in proving a prescription the user of the right is the only evidence of the extent to which it has been acquired. The use and enjoyment of what is claimed must have been adverse, under a claim of right, exclusive, continuous, uninterrupted, and with the knowledge and acquiescence of the owner of the estate, in, over, or out of which the easement prescribed for is claimed, and while such owner was able in law to assert and enforce his rights, and to resist such adverse claim if not well founded.'"

These authorities state the general rule with reference to rights by prescription. The piles or bents under bridge 277A were part of the bridge when it was constructed. When the property owners dug the trench under the bridge the bents and piles were there, and have been ever since. Neither the plaintiff nor any property owner ever had any right to the flow of water under the bridge, except as its flow was affected by the presence of the piles and bents. It necessarily follows, then, that plaintiff never had any right which was hostile to the rail-

road company's rights to retain and maintain the piles and bents, and it does not appear that there was at any time until the commencement of this suit any claim of right to have the bents or piles removed. There was no enjoyment without the presence of the piles, and, if it is true that "prescription acquires for the party precisely what he has possessed, and nothing more, and in proving a prescription the user of the right is the only evidence of the extent to which it has been acquired," it necessarily follows that the plaintiff gained nothing by prescription as against the presence of the piles or bents. In this case it is the plaintiff that is insisting upon a change, not the defendant.

This case must not be confused with cases arising under drainage and other acts in Illinois, such as Cache River Drainage Dist. v. C. & E. I. R. Co., 264 Ill. 97, 105 N. E. 699, cited by plaintiff, and East Side Levee & San. Dist. v. East St. L. & C. Ry., 279 Ill. 123, 116 N. E. 720.

4. It appears that the diverting of the waters, the right to the continuance of which was gained by prescription, if at all, did not begin at the point where the waters went upon the defendant's right of way and under the bridge, but that the diversion began some hundreds of yards toward the east, and that the railroad company at no time had anything to do with diverting the waters. The record discloses that, if the small levee, built about the time the bridge was built, had not been increased from time to time, great quantities of water would have at times continued to flow over the plaintiff's land, and never would have arrived for passage under the bridge, and it seems clear from the record that without additional height being added to the levees the débris, driftwood, etc., would probably not have reached the bridge at all, but would have gone off over plaintiff's land. There is nothing in the record whatever to show that the levee had been there for 20 years or more. It also appears that plaintiff himself contributed to the injury by placing across the waterway an insecure bridge, which was carried down by the water, lodged against the bridge, and formed one of the main obstructions causing the overflow. Other property owners placed rail and other fences in the stream that were doubtless carried down to the bridge by high water.

The judgment is reversed, and the cause remanded for proceedings in harmony with this opinion.