CHICAGO, B. & Q. R. CO. v. BOARD OF SUP'RS OF APPANOOSE COUNTY, IOWA, et al.

(Circuit Court of Appeals, Eighth Circuit. April 8, 1910. On Petition of Plaintiff in Error to Modify Opinion, September 21, 1910.)

No. 3,099.

1. COURTS (§ 365*)—WATERS AND WATER COURSES (§ 38*)—FEDERAL COURTS—STATE DECISIONS.

Under the law of Iowa as established by decision, which will be followed by the federal courts in that state in matters relating to public drains, if surface water in fact uniformly flows off over a given course, having reasonable limits as to width, the line of its flow constitutes a "water course."

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 950–971; Dec. Dig. § 365;* Waters and Water Courses, Cent. Dig. § 30; Dec. Dig. § 38.*

For other definitions, see Words and Phrases, vol. 8, pp. 7410–7413, 7833.]

2. EMINENT DOMAIN (§ 103*)—CONDEMNATION OF RIGHT OF WAY FOR DRAINAGE DITCH—ELEMENTS OF COMPENSATION—CROSSING RAILROAD.

In proceedings to condemn right of way for a public drainage ditch across a railroad the company is not entitled to be awarded as damages the expense of building a new bridge over the ditch, but its damages are confined to the value of the easement across its right of way, regardless of whether or not the ditch follows a natural water course over its right of way.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 274–277; Dec. Dig. § 103.*]

3. RAILROADS (§§ 96, 108*)—CONSTRUCTION AND MAINTENANCE—EXPENSE OF CROSSINGS OVER HIGHWAYS AND PUBLIC DRAINS.

A railroad corporation takes its franchise authorizing it to construct and maintain its road subject to the duty of making such modifications in

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

its roadbed, whether the same consists of trestle or grade, as may be necessary to carry the same across such public improvements as highways and public drains thereafter established.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 284–290, 333–336; Dec. Dig. §§ 96, 108.*]

### On Petition of Plaintiff in Error to Modify Opinion.

4. COURTS (§ 107*)—OPINIONS AS EVIDENCE OF LAW—OBITER DICTUM.

It is not the practice of courts to rest their decisions upon a single ground, or upon the narrowest possible basis of fact; but, on the contrary, every consideration which is directly controlling of the actual issue tendered is a legitimate ratio decidendi, and any matter of fact or of law thus presented which would defeat the claim of the plaintiff is germane to the issue, and the court's opinion thereon is not obiter dictum, although the opinion also disposes of other questions in a manner which would be determinative of the case.

[Ed. Note.—For other cases, see Courts, Dec. Dig. § 107.*]

5. DRAINS (§ 2*)—ESTABLISHMENT AND MAINTENANCE—IOWA STATUTE.

Act Iowa April 2, 1907 (Laws 1907, c. 95), which requires drains, in crossing the right of way of a railroad, to be located at the place of the natural waterway across such right of way, has no application to a drain which had been established and in part constructed before the statute was passed.

[Ed. Note.—For other cases, see Drains, Dec. Dig. § 2.*]

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Southern District of Iowa.

Proceedings before the Board of Supervisors of Appanoose County, Iowa, to establish a drainage ditch. From an award of damages by appraisers to the Chicago, Burlington & Quincy Railroad Company that company appealed and removed the cause into the federal court. From the judgment of that court (170 Fed. 665), it brings error. Affirmed.

See, also, 182 Fed. 301.

On the 4th day of June, 1904, the owners of land situated in the Chariton Valley, Iowa, filed a petition with the defendant, board of supervisors, praying the establishment and construction of a ditch to drain that district. The river at this section runs substantially north and south, having a valley about two miles wide. The stream winds along the western bluff in a very crooked course. The Chicago, Burlington & Quincy Railroad Company has two branch lines which cross the district in a general east and west direction, and are intersected by the proposed drain, the north line being known as the "Kansas City Branch," and the south line as the "Keokuk & Western Branch." Each branch has two trestles in the valley, one over the river, and the other over a stream and lowlands about a mile east of the river. The proposed drain passed beneath these eastern trestles. The Chariton Valley has been subject to ruinous floods, sometimes filling the lowlands from bluff to bluff to the depth of several feet. These inundations were not only disastrous to farms, but also caused serious injury to the trestles and grade of the plaintiff's roads. The drainage ditch taps the eastern bank of the river about a mile north of the tracks, and runs in a southerly course without any sharp curves for seven miles, where it again rejoins the river. It was the opinion of the drainage authorities that this ditch would not only double the channel of the river, but that owing to its straight course the water would pass through it rapidly, and thus prevent or quickly relieve the overflows. Upon the filing of the petition and plan for the drain, the county auditor, in obedience to the local statute,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

served notice upon the railroad company to file its claim for any damage which it would suffer from the construction of the improvement. In response to this notice the company presented a petition wherein it claimed damages not only for the value of the land occupied by the drain, but also for the cost of constructing and maintaining new bridges with spans and concrete piers over the ditch. Its claim amounted to $45,000 for each branch. In due time a board of appraisers was appointed to view the course of the drain and estimate the damage to be caused by its construction. This board assessed the plaintiff's damages in the case of one branch line at $82.90 and the other $112.50. These sums seem to have covered simply the damage to the right of way lying below the trestle, and included nothing for damages accruing to the superstructure. The board of supervisors, by resolution, approved this appraisement. Thereupon the railroad company, in accordance with the local statute, appealed from the decision to the district court of the county, and, upon the record being filed there, removed the case to the federal court. The action was tried without a jury, pursuant to written stipulation. The court made elaborate findings of fact, among other things that the expense of cutting the trestle for the construction of the drain was, for one branch, $410, and for the other, $488.22, and that the cost of building new bridges over the drain, with spans supported by concrete abutments, would be in each case $17,924, and that the annual cost of maintaining each bridge would be $36, which, capitalized at 5 per cent., would require $720. The railroad company claimed that it should be allowed these sums as damages accruing to it from the construction of the drain. The claim was denied by the trial court, and judgment entered affirming the decision of the board of supervisors. The present writ of error is brought to review that judgment.

H. H. Trimble (Palmer Trimble, on the brief), for plaintiff in error.
Clarence A. Baker, for defendants in error.

Before SANBORN and ADAMS, Circuit Judges, and AMIDON, District Judge.

AMIDON, District Judge (after stating the facts as above). An important question of fact at the trial was whether the drain followed a water course at its point of intersection with plaintiff's roads. There are two creeks arising in the eastern bluffs bordering on the valley, and flowing southwesterly, and finally discharging into Chariton river. Both streams have well-defined channels at their upper course, and also in portions of the valley, but at other points their banks disappear and they become lakes or bayous. The northermost stream, known as "Locust Creek," enters the valley north of the north line of plaintiff's road, and its waters, together with the surface waters of the eastern part of the valley, pass under the north branch at the eastern trestle above mentioned, and at the point where that branch is intersected by the drain. Between the two branches this stream is joined by another creek similar in character and known as "Indian Creek," flowing in from the east. The combined waters of these streams pass under the south branch of the plaintiff's road at the eastern trestle. The findings of the court touching the character of these streams, as at first made, are ambiguous. It appears, however, from the recitation in the court's judgment that these findings were prepared by counsel for the railroad company, and that later additional findings were prepared by counsel for the board of supervisors, and signed by the court for the purpose of modifying the earlier findings. They show upon their face that their main object was to make plain the character of these water courses. The findings all seem to have been

signed and filed on the same date—December 9, 1908. In these last findings the court declares that each of these streams is "a natural water course," and "while its waters spread somewhat in passing under said trestle bridge, said creek has well-defined banks both before passing under such trestle bridge and after." There is much other language to the same effect.

What constitutes a water course is a matter of local law as to which federal courts should follow the decisions of the state. The Supreme Court of Iowa, in the case of Hull v. Harker, 130 Iowa, 191, 106 N. W. 629, says:

"To constitute a natural water course it is not necessary that the flow of water through it should have been sufficient to wear out a channel or canal having definitely well-marked sides and banks. If the surface water in fact uniformly and habitually flows off over a given course, having reasonable limits as to the width, the line of its flow is, within the meaning of the law applicable to the discharge of surface water, a water course."

While there is some conflict in the decisions of the courts of the several states on the subject, this, in our judgment, is a sensible view of the term as applied to public drains. To require such ditches to follow the line of streams having well-defined banks, would defeat their principal object. Their purpose is to drain lowlands which are not drained by streams having well-defined banks. Their best course lies along the line of swales and bayous over which surface and overflow water passes, but does not move with sufficient rapidity to render the land fit for agriculture. The finding of the trial court is amply supported by the evidence, and brings these streams well within the meaning of a water course, as defined by the highest court of the state.

Such being the case our duty is plain. The Supreme Court of Iowa, in Mason City & Ft. Dodge R. R. Co. v. Board of Supervisors, 121 N. W. 39, and Chicago & N. W. Ry. Co. v. Drainage Dist. No. 5, 121 N. W. 193, had before it the identical question which is here presented, and it was there ruled that a railroad company is not entitled to recover the expense of building a new bridge over a public drainage ditch, but that its damages are confined to the value of the easement across its right of way. These cases followed the decision of the Supreme Court of the United States in Burlington & Quincy R. R. Co. v. Drainage Commissioners, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596, where a similar rule was enforced. The trial court was clearly right in following these decisions as a binding declaration of law.

We do not, however, in the present case, think that plaintiff's measure of damages would be different if there was no water course at the point where the ditch intersects its lines. The fact of such water course is brought prominently forward in the above decisions of the Supreme Court of Iowa, and in the case of Chicago, Burlington & Quincy R. R. Co. v. People, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596.

Nevertheless, we do not think this feature a controlling factor in those decisions. The duty of the railroad to conform its road-bed to the requirement of such public easements as highways and ditches is an incident of its right to construct and maintain its

road. The whole subject has been clearly defined in the long line of cases in which railroads have been charged with the expense not only of building fences along their right of way, and cattle guards, but also with the expense of constructing crossings over new highways, both public and private, and also with the expense of constructing bridges and viaducts so as to obviate crossings at grade whenever the public welfare required such a change. It has been uniformly contended by railroads that such expenses constituted a taking of their property for public use without just compensation, a deprivation of their property without due process of law, and a denial to them of the equal protection of the law. While there has been some conflict in the decisions, the overwhelming weight of authority at the present time is that such requirements are just, and are not subject to either of the constitutional objections mentioned.

It will be profitable to refer to some of these authorities. In the late case of State v. St. Paul, Minneapolis & Manitoba R. R. Co., 98 Minn. 380, 108 N. W. 261, 120 Am. St. Rep. 581, will be found an interesting discussion of the subject by Judge Brown, speaking for the Supreme Court of Minnesota. There a new highway had been opened across the defendant's line, and a bridge constructed over the road at public expense. This bridge was destroyed, and the public authorities made demand upon the company to construct a proper bridge to carry the highway over its line. This request having been refused, mandamus was brought to compel the company to make the improvement. The suit was resisted upon the constitutional grounds above mentioned, but the writ was awarded. The opinion contains a very full review of the authorities. As to the duty and its grounds, the court says:

"When the franchise was granted to the railroad company to construct and operate its railroad, it was not contemplated either by it or by the state that no more public highways should be laid out which would increase the number of places where the ordinary police regulations would have to be complied with by the railroad company to its inconvenience and expense; on the contrary, it must have been understood and contemplated, especially in a new state rapidly advancing in population and in the development of its resources, where new towns were springing up and new avenues for travel and traffic were becoming necessary, that new streets and roads would and must be laid out, and that many of these would necessarily cross existing railroad lines; and we cannot resist the conclusion that, so far as concerns the matter now under consideration, the charter of the relator was taken subject to the right of the state to impose this duty, whenever by reason of the establishing of new highways it should become necessary, and hence the relator is not entitled to compensation for obedience to this requirement."

This decision was affirmed by the Supreme Court, 214 U. S. 497, 29 Sup. Ct. 698, 53 L. Ed. 1060. See, also, N. P. Ry. Co. v. Duluth, 208 U. S. 583, 592, 28 Sup. Ct. 341, 52 L. Ed. 630, et seq.

The case of New Orleans Gas Co. v. Drainage Commissioners, 197 U. S. 453, 25 Sup. Ct. 471, 49 L. Ed. 831, is directly in point. There a gas company was granted a franchise to lay its pipes and mains in the public streets. Under this franchise the pipes were placed at the point indicated by public authorities. Afterwards the city established a drainage system, and in its construction it became necessary to have the gas mains and pipes removed. The gas company claimed damages

for the expense incurred in removing the pipes, and its right to recover was denied by the court. The fact that these gas pipes were laid in a public street is not controlling. They were laid there for a public purpose, and in compliance with public authority. The company's right was a vested right, the same as any other right of private property. The court, while fully recognizing this, still held that the pipes were subject to such adjustment as should be rendered necessary by other public easements. It says of the company's right:

"When it laid its pipes it was at the risk that they might at some future time be disturbed when the city might require for a necessary public use that changes in location be made."

And in conclusion it is again said:

"In the exercise of the police power of the state for a purpose highly necessary in the promotion of the public health, it has become necessary to change the location of the pipes of the gas company so as to accommodate them to the new public work. In complying with this requirement at its own expense none of the property of the gas company has been taken, and the injury sustained is damnum absque injuria." See, also, Portland R. R. Co. v. Inhabitants of Deering, 78 Me. 61, 2 Atl. 670, 57 Am. Rep. 784.

The subject is examined with great learning by the Supreme Court in the case of Chicago, Burlington & Quincy R. R. Co. v. Chicago, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. Ed. 979. There, the company was required to open a new street across its right of way, and as elements of damage demanded the expense of erecting gates, planking the crossing, and maintaining a flagman. The court held that these were not proper items of damage, saying:

"The expense that will be incurred by the railroad company in erecting gates, planking the crossing and maintaining a flagman in order that its road may be safely operated—even if all that should be required—necessarily result from the maintenance of a public highway under legislative sanction and must be deemed to have been taken by the company into account when it accepted the privileges granted by the state."

To the same effect is New York & New England R. R. Co. v. Bristol, 151 U. S. 556, 14 Sup. Ct. 437, 38 L. Ed. 269. There the railroad company was required to construct a new viaduct to conduct a street over its road. This imposed a heavy expense on the railroad, and it was claimed deprived it of its property without due process of law. The court, however, denied the claim, and held that the duty of bearing such expenses was an incident to the right of the company to construct and maintain its road.

The case of In re Selectmen of Norwood, 161 Mass. 259, 37 N. E. 199, is interesting because it arose in the state of Massachusetts, where from an early time the public authorities had been compelled by statute to bear all the expenses of putting in crossings at places where new streets were opened across the right of way of railroads. All the railroads in the state had been built under this statute. In 1890 another statute was passed imposing the burden of such expense upon the railroad, and it was contended that the enforcement of that law amounted to a deprivation of property without due process of law, and a denial to the railroad company of the equal protection of the law. Upon full

review of the authorities the claim was denied, and the ground of the decision was stated to be that:

"The railroad can properly be charged with expenses incurred in adapting the public ways and the railroads to each other in such a manner as best to promote the safety and convenience of the people."

The Supreme Court of Indiana, in Lake Erie & Western R. R. Co. v. Shelley, 163 Ind. 36, 71 N. E. 151, had before it a case involving the expense of laying out a new street across the right of way of a railroad. On that subject the court says:

"It is clear from our statute and the cases cited that a railroad company acquires its right of way subject to the right of the state to extend public highways and streets across the same, and subject to the condition that it must place, keep, and maintain all highway crossings regardless of whether the highway was established before or after the road was built, in such condition as not unnecessarily to impair the usefulness of the highway and so as not to interfere with the free use thereof and in such a manner as to afford security for life and property. It is evident that in proceedings to establish a public highway across a railway track the railroad company is not entitled to any damages for the cost and expense of complying with the requirement of laws passed in the exercise of the police power, and that, when the highway crosses the right of way at a point where the company has only a track or switch, no question can justly arise as to any impairment of its franchise by such taking for under such circumstances both the use as a highway and as a railway can stand together, and do not interfere with each other. The plaintiff in error took its charter subject to the power of the state to provide for the safety of the public, in so far as the safety of the lives and persons of the people were involved in the operation of the railroad. The company laid its tracks subject to the condition necessarily implied that their use could be so regulated by competent authority as to the public safety." See, also, C., M. & St. P. Ry. Co. v. Milwaukee, 97 Wis. 418, 72 N. W. 1119; Gulf, C. & S. F. R. R. Co. v. Milan Co., 90 Tex. 355, 38 S. W. 747; City of Harriman v. Southern Ry., 111 Tenn. 538, 82 S. W. 213.

These crossing cases come much nearer to violating the constitutional rights of railroads than does the uncompensated intersection of a public drain. They compel the railroad not only to maintain its road over the highway, but also to construct, often at great expense, a safe passageway for the sole use of the traveling public.

If the drain here involved had existed when the railroads were constructed, the company would have been compelled to bear the expense of building a proper bridge over the ditch. Why should it not do so now? By simply constructing its line first, did the company forever escape this burden, and acquire a vested right that no future public improvement should come that way except at the charge of rebuilding and maintaining the railroad at the place of intersection? The construction of the ditch did not and could not "take" a strip of the railroad. Notwithstanding the easement of the ditch, the company continued in the right to maintain and operate its road. All the public required was that the company should carry its road over the ditch at its own expense and not at the expense of the public. To hold that the public must bear the expense of constructing the bridges in question is not to compel them to pay for something which they have taken in constructing the ditch, but is to impose upon them the burden of constructing and maintaining the plaintiff's roads at the point of intersection. A more reasonable view is that declared by the courts,

whose decisions we have quoted, that a railroad corporation takes its franchise authorizing it to construct and maintain its road, subject to the duty of making such modifications in its roadbed, whether the same consists of trestle or grade, as may be necessary to carry the same across such public improvements as highways and public drains. To require this does not deprive the company of its property without due process of law, or deny it the equal protection of the law, but simply charges it with the obligation of maintaining its own road.

The claim of the plaintiff in this case is peculiarly devoid of merit. It has maintained for years wooden trestles at the points where its lines are intersected by the drain. These structures are temporary and perishable. In their place it demands that permanent bridges, with spans and concrete abutments, shall be built and maintained at public expense across the drain. That would not be compensation for injury to private property, but simple enrichment of the company out of the public treasury.

The judgment is clearly right, and should be affirmed.

SANBORN, Circuit Judge (dissenting). The Railroad Company had constructed a bridge over the Chariton river for each of its lines which was sufficient in size and character to conduct each of its railroads over the channel and the waters of that stream. The defendant constructed a ditch which tapped the eastern bank of that river above these bridges, and conducted a part, if not all, of its waters across the railroads at places where there were trestles but no bridges, and thereby made it necessary for the railroad company to construct two new bridges, at the places where the new course of the river crossed the railroads, at an expense of about $40,000. Because, while the owner of a higher tract of land has the right to have the surface water naturally coming upon his premises pass off by the natural drains through or over lower or servient lands, he has no right to open or remove natural barriers and let on to or over lower or servient lands waters which would not naturally flow there (Dayton v. Rutherford, 128 Ill. 271, 21 N. E. 198; Lambert v. Alcorn, 144 Ill. 313, 33 N. E. 53, 57, 21 L. R. A. 611), it seems to me that the turning of the waters of this river from their natural course where bridges had been constructed for them into a new course that entailed upon the railroad company either the loss of its railroads or a necessary expense of $40,000 to build new bridges for them was in reality the taking of its property, of the real value of its right of way and railroad, and that this ought not to be and cannot be done lawfully without making just compensation therefor under the Constitutions of the United States and the state of Iowa. I am unable to bring my mind to assent to the proposition that either individuals or quasi public corporations or states may turn rivers from their natural courses over which railroad companies have constructed ample viaducts for their roads to new courses which compel them to construct new viaducts, and may render the old ones valueless without making any compensation for the real destruction of the railroads they thus work unless the companies prevent this destruction by large expenditures for new bridges over the new courses of the rivers. For these and other reasons, which it would be useless

to specify, I have been compelled to dissent from the opinion and conclusion of the majority in this case.

On Petition of Plaintiff in Error to Modify Opinion.

AMIDON, District Judge. Plaintiff in error, the Chicago, Burlington & Quincy Railroad Company, moves the court to strike out the following language from the opinion filed in this case:

"We do not, however, in the present case, think that plaintiff's measure of damages would be different if there was no water course at the point where the ditch intersects its lines. The fact of such water course is brought prominently forward in the above decisions of the Supreme Court of Iowa, and in the case of Chicago, Burlington & Quincy R. R. Co. v. People, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596. * * * Nevertheless we do not think this feature a controlling factor in those decisions."

The motion recites that in a previous part of the opinion the court had already found that the drain followed the line of a water course, and that under Chicago, Burlington & Quincy Railroad Company v. People, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596, and certain decisions of the Supreme Court of Iowa, the public had an easement in this water course for drainage purposes to which the plaintiff in error was bound to conform its railroad at its own expense. The motion then asserts that this part of the opinion disposes of the actual case before the court, and that the above language is obiter, and will embarrass petitioner in other causes now pending in the states of Iowa and Missouri in which plaintiff's right to recover the expense of building bridges over public drains which do not follow water courses is directly involved.

We first observe that, if the motion is well founded, it should be extended, not only to the language above quoted, but to all subsequent portions of the opinion; for the remainder of the opinion is simply a discussion of authorities in support of the proposition to which plaintiff objects.

A consideration of the controlling issue in the cause, we think, will show the motion to be without merit. Plaintiff in error bases its claim to recover the expense of constructing and maintaining a permanent bridge over the drain upon the ground that such expense constitutes, within the law of eminent domain, damages for property taken and injured by the opening of the drain across its right of way. If this claim is well founded, any statutes of the state of Iowa which attempt to deprive the company of the right to recover are in direct violation of both the federal and state Constitutions requiring just compensation to be made for property taken or damaged for a public use and forbidding the deprivation of property without due process of law. We were of the opinion, therefore, that the statutes of Iowa, to which much attention is given in the briefs, were not important in the decision of the case. If plaintiff's contention was sound as to the nature of its claim, the statutes were void. If, on the other hand, the expense of building and maintaining the bridge did not constitute "damages," within the meaning of that term as used in the law of eminent domain, plaintiff's claim was clearly without merit. The greater part of the oral argument and printed brief of learned counsel

for plaintiff in error is devoted to the citation and discussion of authorities in support of his contention as to the nature of plaintiff's claim. It is manifest, therefore, that the opinion does not deal ,with an issue which he has not tendered, or as to which he has not been fully heard.

The defendant resisted liability upon several grounds: (1) The statutes of Iowa, which in our judgment, as already explained, were not important. (2) The claim that the ditch followed a water course, which gave to the public an easement for the construction of a public drain. (3) That the expense of constructing and maintaining the bridge over the drain did not constitute damages for property taken or injured, within the law of eminent domain. This latter point is stated at page 17 of the printed brief of defendant in error, though it is not fully discussed. Clearly any matter of fact or of law thus presented, which would defeat the claim of plaintiff in error, is germane to the issue presented by the cause. It is not the practice of courts to rest their decisions upon a single ground, or upon the narrowest possible basis of fact. On the contrary, every consideration which is directly controlling of the actual issue tendered is a legitimate ratio decidendi. This is strikingly illustrated by the decision of the Supreme Court in Union Pacific Railroad Co. v. Mason City & Fort Dodge Railroad Co., 199 U. S. 160, 26 Sup. Ct. 19, 50 L. Ed. 134, and in the decision of this court, speaking by Judge Sanborn, in the same case, 128 Fed. 230, 64 C. C. A. 348. There the trial court based the defendant's liability upon written contracts. This decision the Supreme Court affirmed. It then went further, and rested defendant's liability upon a new and independent ground arising out of statutes. It was earnestly urged by distinguished counsel that all that was said in this second part of the opinion was obiter; but the Supreme Court and this court held that it had the same binding force as that which was said in support of the first ground of the decision.

If the drain followed a water course, the public had a legal right or easement to use it, and the plaintiff could base no claim for damages upon such a use. On the other hand, if the expense of building and maintaining the bridge was only an indirect and incidental result of a public improvement for the general welfare (200 U. S., bottom page 593, 26 Sup. Ct., page 341, 50 L. Ed. 596)—if it arose primarily out of plaintiff's continuing duty to maintain its own railroad—then under no circumstances could it be regarded as damages for property taken or injured. In so ruling, the opinion responds directly to plaintiff's claim. Argument which shows that plaintiff's claim is without foundation is manifestly as pertinent to the case as the other defense, which shows that defendant possesses a right inconsistent with such claim.

It is also true that there are features which distinguish the present case on the facts from the case of Chicago, Burlington & Quincy R. R. Co. v. People, 200 U. S. 561, 26 Sup. Ct. 341, 50 L. Ed. 596, and the Iowa cases referred to in the first part of the principal opinion. There the easement of the public in the water course was sustained no further than the drainage of the waters usually flowing in the course and surface waters naturally tributary thereto. In the present case

the bed of a small stream is enlarged to the width of 100 feet, not for the purpose of carrying off the waters of the stream and tributary surface waters, but for the purpose of diverting part of a river from its natural course into the artificial waterway made by the drain.

It seems to us entirely plain that the second ground of the decision is directly responsive to the claim asserted by plaintiff, and that the cause could not properly be disposed of without a consideration of the defense which it discusses.

Our attention is also called by the motion to a statute which was passed in Iowa April 2, 1907, more than two years after the drain was established, and at least in part constructed. That statute requires drains in crossing the right of way of a railroad to be located "at the place of the natural water way across such right of way." Laws 1907, c. 95. Throughout the brief of plaintiff in error in this case it is urged that this statute is not applicable to the drain here in question. We accepted that contention, without expressly deciding the point. We are entirely clear that the section to which our attention is now called could have no application to a drain which had previously been established and in part constructed before the statute was passed.

We, of course, recognize the fact that the entire matter of the location of drains is subject to the control of the Legislature, and there is nothing in the opinion which could throw any doubt upon the rights of railroads under the statute referred to as to drains established after the law became effective.

The motion must be denied.

SANBORN, Circuit Judge, dissents.