71 F.3d 265
 CHICAGO AND NORTH WESTERN TRANSPORTATION COMPANY, n/k/a
Chicago and North Western Railway Company, Appellant,
v.
WEBSTER COUNTY BOARD OF SUPERVISORS, as Trustees for Webster
County Drainage Districts 197, 197 Branch 2, 106,
64, 89 and 255, Appellee.
 No. 95-1969.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Oct. 16, 1995.
Decided Nov. 24, 1995.
Rehearing and Suggestion for Rehearing En Banc Denied Jan. 2, 1996.
 
 Steven P. DeVolder, Des Moines, Iowa, argued, for appellant.
 James L. Kramer, Fort Dodge, Iowa, argued (Susan L. Ahlers, on the brief), for appellee.
 Before RICHARD S. ARNOLD, Chief Circuit Judge, and WOLLMAN and MORRIS SHEPPARD ARNOLD, Circuit Judges.
 MORRIS SHEPPARD ARNOLD, Circuit Judge.
 
 
 1
 Chicago and North Western Transportation Company operates a railroad company with tracks located in Webster County, Iowa. The Webster County Board of Supervisors is the trustee for a drainage district and the railroad's right-of-way crosses a ditch that the district maintains. As part of a project to widen the ditch, the board decided to enlarge the drain through the railroad's right-of-way, and, pursuant to Iowa law, ordered the railroad to install a new culvert. When the railroad refused, the board built the culvert itself and commenced an action against the railroad in Iowa state court to recover its costs. The state case has been stayed.
 
 
 2
 The railroad then filed this suit against the board seeking a declaratory judgment under 28 U.S.C. Sec. 2201 (1994) to the effect that collecting the cost of the culvert constituted a "discriminatory tax" under the Railroad Revitalization and Regulatory Reform Act ("the 4-R Act"), 49 U.S.C. Sec. 11503(b)(4) (1995). The district court[1] found that the board did not violate the 4-R Act because charging the railroad for the culvert was neither discriminatory nor a tax and therefore granted the board's cross motion for summary judgment. We affirm.
 
 I.
 
 3
 The board has the authority to order the railroad to build and pay for the culvert pursuant to a comprehensive statutory scheme designed to ensure adequate drainage throughout Iowa. Under that scheme, county boards of supervisors have the power to establish drainage districts and to "cause to be constructed ... any levee, ditch, drain, or watercourse" needed for proper drainage. Iowa Code Sec. 468.1 (1990). If a drainage district ditch crosses a railroad's right-of-way, the board can direct the railroad to construct, at the railroad's expense, necessary improvements to its roadbed. Id. Sec. 468.109--468.111. If the railroad refuses, the board may build the improvement itself and bill the railroad for the cost of the project. Id. at Secs. 468.112, 468.113.
 
 II.
 
 4
 Our task is to determine whether the costs imposed on the railroad pursuant to Iowa drainage law comport with a federal law prohibiting states from imposing discriminatory taxes on railroads.
 
 
 5
 In an effort to improve the financial stability of the country's railway system, Congress enacted the 4-R Act in 1976. See Oregon v. ACF Indus., Inc., --- U.S. ----, ----, 114 S.Ct. 843, 846, 127 L.Ed.2d 165 (1994). When it passed the 4-R Act, Congress was aware that, because of their absentee, non-voting status, railroads had historically fallen prey to discriminatory state and local taxes. Id. Congress attempted to remedy this difficulty by providing for declaratory and injunctive relief against discriminatory taxation. 49 U.S.C. Sec. 11503(b). The first three subsections of Sec. 11503(b) prohibit discriminatory property taxation. 49 U.S.C. Sec. 11503(b)(1)-(3). The final subsection prohibits local governments from "impos[ing] another tax that discriminates against a rail carrier." Id. Sec. 11503(b)(4).
 
 
 6
 The railroad argues that requiring it to pay for the culvert is "another tax that discriminates against a rail carrier" within the meaning of Sec. 11503(b)(4). We have characterized this section as a catch-all that "forbids all taxes that discriminate against railroads." Trailer Train Co. v. State Tax Comm'n, 929 F.2d 1300, 1302 (8th Cir.1991). As the Seventh Circuit has noted, the provision is "designed to prevent a state from accomplishing the forbidden end of discriminating against railroads by substituting another type of tax" for discriminatory property taxation. Burlington Northern R.R. Co. v. City of Superior, 932 F.2d 1185, 1186 (7th Cir.1991).
 
 III.
 
 7
 Because the board is not violating the 4-R Act if it is not taxing the railroad, our first inquiry must be whether imposing the costs of the culvert on the railroad constitutes a tax within the meaning of Sec. 11503(b)(4). Because Congress did not define what it meant by a tax (and perhaps in the nature of things it could not), we lack specific statutory guidance as to whether it intended to prohibit the board from charging the railroad for the kinds of drainage improvements involved here.
 
 
 8
 Over 100 years ago, the Supreme Court faced the question of whether a federal statute that required ship owners to pay fifty cents for every immigrant passenger entering a U.S. port violated Article I, Sec. 8 of the Constitution because the statute did not "provide for the common defense and general welfare" and it was not "uniform" in application. Head Money Cases (Edye v. Robertson), 112 U.S. 580, 589-90, 5 S.Ct. 247, 249-50, 28 L.Ed. 798 (1884). The Court held that the levy was not a tax, and thus Article I, Sec. 8 had no application to the case, because the money raised did "not go to the general support of government." It was instead used solely to regulate immigration. Id. at 595, 596, 5 S.Ct. at 252, 252.
 
 
 9
 The Head Money Cases stand for the proposition that a government levy is a tax if it raises revenue to spend for the general public welfare. The Court has reiterated this definition in subsequent decisions, see, e.g., Nat'l Cable Television Assoc. v. United States, 415 U.S. 336, 340-41, 94 S.Ct. 1146, 1148-49, 39 L.Ed.2d 370 (1974), and courts of appeals have frequently relied on it to decide whether a challenged levy is a tax. For example, in Union Pacific R.R. Co. v. Pub. Util. Comm'n, 899 F.2d 854, 858-59 (9th Cir.1990), the Ninth Circuit held that an Oregon levy on railroad revenues was not a tax within the meaning of Sec. 11503(b)(4) of the 4-R Act because the proceeds went exclusively to defray the cost of railroad regulation "rather than to raise general revenues." See also San Juan Cellular Telephone Co. v. Pub. Serv. Comm'n, 967 F.2d 683, 685 (1st Cir.1992) ("Courts .. emphasize the revenue's ultimate use, asking whether it provides a general benefit to the public."); Keleher v. New England Tel. & Tel. Co., 947 F.2d 547, 549 (2d Cir.1991) ("The word 'tax' encompasses any ... revenue collection device."); Brock v. Washington Metro. Area Transit Auth., 796 F.2d 481, 488 (D.C.Cir.1986) ("A levy is properly defined as a 'tax' ... when its principal purpose is to raise revenues."); Schneider Transp. v. Cattanach, 657 F.2d 128, 132 (7th Cir.1981) ("The registration fees are imposed for revenue-raising purposes, a characteristic of any tax."); Robinson Protective Alarm Co. v. City of Philadelphia, 581 F.2d 371, 376 (3d Cir.1978) (finding city ordinance levied a tax because "moneys collected are added to the public fisc.").
 
 
 10
 Given the facts of this case, we agree with the district court that the board is not using Iowa drainage laws to tax the railroad. The board is not raising revenue from the railroad to expend for the general public benefit; it simply wants reimbursement for building a culvert that benefits the railroad alone.
 
 
 11
 We reject the railroad's contention that the board is using the drainage laws to finance a project that benefits all of the residents in the drainage district. It is true that the general public will benefit from the board's efforts to improve drainage. It is also true that the improvement project requires widening the ditch through the railroad's right-of-way. The board, however, does not seek to recover the cost of widening the ditch, and if the board had demanded that the railroad expand the ditch, we would face an entirely different difficulty. Here the board seeks reimbursement only for that portion of the project which keeps the railroad's roadway intact. The same improvement in drainage, with the same benefit to the public, would have resulted if the board had bulldozed a ditch through the right-of-way instead of installing a culvert. At common law, the board could have, without compensating the railroad, been authorized to do just that, because it is well settled that railroads are not entitled to compensation for damage to their roadbeds caused by the installation of drainage improvements. See Chicago, B & Q R.R. v. State of Illinois ex rel. Grimwood, 200 U.S. 561, 573, 26 S.Ct. 341, 342, 50 L.Ed. 596 (1906); Chicago, B & Q R.R. v. Bd. of Supervisors, 182 F. 291, 294 (8th Cir.1910).
 
 IV.
 
 12
 The fact that the railroad is the only beneficiary of the culvert is by itself enough to lead us to conclude that the board is not taxing the railroad. Our conclusion, however, is also counseled by principles of federalism. The Supreme Court recently observed, in the context of a 4-R Act case, that the statute limits state sovereignty, and "when determining the breadth of a federal statute that impinges upon or pre-empts the State's traditional powers, we are hesitant to extend the statute beyond its evident scope." Dep't of Rev. v. ACF Industries, --- U.S. at ----, 114 S.Ct. at 850.
 
 
 13
 At the time Congress passed the 4-R Act, many states had statutes requiring railroads to construct improvements, including culverts, when drainage ditches crossed their rights-of-way. Most of these statutes, which remain in effect today, were enacted at the turn of this century. See, e.g., Ark.Code Ann. Sec. 14-121-805 (1987); Ill.Stat.Ann. ch. 70, Sec. 605/12-4 (1995); Kan.Stat.Ann. Sec. 24-437 (1994). In Iowa, railroads have been required by statute to pay costs like the ones involved in this case since 1904. During the first few decades of the 20th Century, many courts, including the United States Supreme Court, turned away constitutional challenges to these acts. See Chicago, B & Q R.R. v. Drainage Comm'rs, 200 U.S. at 573, 26 S.Ct. at 342.
 
 
 14
 These statutes represent the juridical background against which Congress passed the 4-R Act, and nothing in either its language or its legislative history indicates that Congress wanted to upset or undermine state drainage laws. Congress did not express an intent to preempt the states' long-standing and common practice of charging railroads for certain drainage improvements, and we refuse to impute that intent into Sec. 11503(b)(4), given the historical environment in which it was enacted. See Union Pacific, 899 F.2d at 857 (relying in part on long-standing and widespread application to uphold regulatory levy).
 
 V.
 
 15
 Because we have determined that the board did not tax the railroad by requiring reimbursement for the cost of the culvert, we need not decide whether the board's actions discriminated against the railroad. We therefore affirm the judgment of the district court.
 
 
 
 [1]
 The Honorable Mark W. Bennett, United States District Court for the Northern District of Iowa