The Honorable Lindbergh Thomas State Representative P.O. Box 505 Grady, AR 71644-0505
Dear Representative Thomas:
You have presented the following question for my opinion:
 Does A.C.A. § 14-121-805 require a railroad that has constructed a railroad bridge to widen and/or make improvements (at its own expense) to the bridge in order to accommodate improvements to a drainage ditch running under the bridge?
You indicate that your question arises out of a situation in the City of Gould, Arkansas. You state that the Grady-Gould Flood Prevention Plan calls for the widening of a certain drainage canal that runs near Grady and Gould, draining farmland throughout the area. Over the years, there has been considerable flooding in the City of Gould and the surrounding farmland as a direct result of the inability of the Grady-Gould Watershed Improvement District to deepen and widen the canal in this area. You explain that a railroad trestle that crosses the canal is too narrow and would need to be widened in order to widen the canal. The current structure of the trestle prevents widening of the canal without also widening the trestle. Apparently there is a dispute over whether the railroad company or the drainage improvement district should bear the expense of widening the trestle to accommodate a widening of the drainage canal. As a result of the delay in widening the canal, the section under the trestle has become a bottleneck for drainage through the canal, thus causing periodic flooding in the area.
RESPONSE
It is my opinion that as the law currently stands, A.C.A. § 14-121-805
imposes upon a railroad company the responsibility to pay the cost of widening and/or making improvements to the railroad's trestle that crosses over a drainage improvement district's drainage ditch, in order to accommodate necessary improvements to the drainage ditch.
A.C.A. § 14-121-805 is a part of a set of statutes that governs drainage improvement districts. A.C.A. § 14-121-805 states:
 (a) The commissioners [of the drainage improvement district] shall have the right to carry the ditches across any highway.
 (b) Ditches may also be carried under or through any railroad track or tramway, and the owner thereof shall have no claim for damages on that account but shall bridge the ditch at its own expense.
A.C.A. § 14-121-805.
The above quoted statute was enacted as a part of Act 271 of 1909. The Arkansas Supreme Court applied the statute in Hahn Carter v. GouldS.W. Ry., 113 Ark. 537, 168 S.W. 1064 (1914). In that case, a drainage improvement district determined that it was necessary to run one of its drainage ditches under an existing railroad track. The railroad company that owned the track demanded payment of the cost of bridging the ditch. The district paid the amount under protest in order to expedite construction of the ditch, and later sued the railroad to recover the amount paid. The district relied upon Section (b), quoted above, in support of its position that the railroad should bear the expense of bridging the ditch. The Arkansas Supreme Court agreed that Section (b) was precisely on point, and ordered the railroad company to compensate the district for the amount paid under protest.
Although Hahn Carter involved the initial construction of the railroad bridge over a new drainage ditch (rather than the widening of an already-existing bridge), it is my opinion that the principles enunciated in that case apply equally to maintenance and improvements to a previously constructed crossing. I note in this regard that the Hahn Carter court relied in support of its decision on the fact that Section (b) was analogous to the existing statutes requiring railroad companies to bear the expense of constructing and maintaining crossings over public roads and highways, under the authority of which the court had previously required the imposition of such expenses upon railroad companies. SeeSouthwest Railway Company v. Royall, 75 Ark. 532, 88 S.W. 555 (1905).
The provisions of A.C.A. § 14-121-805 have not been amended since the original enactment in 1909, nor has the Arkansas Supreme Court had occasion to construe the statute since it did so in Hahn Carter.
Moreover, the statute does not appear to have been superseded by any other state or federal law.[1] Accordingly, the statute continues to be valid law, and the precedential value of Hahn Carter remains valid.
I am aware that certain theories could be posited against the validity of A.C.A. § 14-121-805 on constitutional grounds. For example, it could be argued that A.C.A. § 14-121-805 places an unconstitutional burden on interstate commerce, or that requiring railroads to pay for construction to accommodate drainage improvement districts would constitute an unconstitutional "taking" without compensation. These arguments would be based, respectively, upon Article 1, § 8, and Amendments 5 and 14 of the U.S. Constitution. I note that these theories require and depend upon the presentation of certain factual evidence. Because I do not know what factual evidence would be presented in support of these arguments, I cannot opine definitively as to how a court would apply the arguments to the facts you have outlined. Any court that considers the arguments, however, will undoubtedly employ the principle that statutes are entitled to a presumption of constitutionality and that challengers must bear the burden of proving otherwise. See Eady v. Lansford, 351 Ark. 249,92 S.W.3d 57 (2002).
The question of how such arguments would fare will ultimately depend upon how the courts will weigh certain factual considerations. The potential interstate commerce claim would require reliance on the "dormant Interstate Commerce Clause," the idea being that even in the absence of preemptive federal regulation, the states cannot regulate in a way that burdens interstate commerce. See Burlington Northern R. Co. v. State ofNeb., 802 F.2d 994, 999 (8th Cir. 1986). The interstate commerce argument would most likely be analyzed under the following balancing test established by the U.S. Supreme Court in Pike v. Bruce Church,397 U.S. 137 (1970):
 Where the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. . . . If a legitimate local purpose is found, then the question becomes one of degree. And the extent of the burden that will be tolerated will of course depend on the nature of the local interest involved, and on whether it could be promoted as well with a lesser impact on interstate commerce.
Id. at 142.
Thus, any interstate commerce claim that might be posited against A.C.A. § 14-121-805 would require certain factual showings to demonstrate the local interest that is at stake as compared with the statute's effect on interstate commerce. I note that the Court of Appeals for the Eighth Circuit has given credence to the validity of the local interest served by A.C.A. § 14-121-805. In Chicago and North Western TransportationCompany v. Webster County Board of Supervisors, 71 F.3d 265 (8th Cir. 1995) (reh. denied 1996), the Eighth Circuit upheld, against a discriminatory tax claim, a charge imposed under an Iowa statute that was similar to A.C.A. § 14-121-805 upon a railroad company for the cost of widening a drainage ditch through the railroad's right of way. The court noted the local benefit served by the statute and by similar statutes in other states, and emphasized the continuing validity of these statutes, specifically mentioning A.C.A. § 14-121-805. In my opinion, the Eighth Circuit's recognition of the local benefits of statutes such as A.C.A. §14-121-805 heightens the difficulty that will be faced by any challenger to the statute.
In addition, it is my opinion that any potential "takings" claim was sufficiently refuted by the U.S. Supreme Court in C.B. Q. Railway v.Drainage Comm'rs., 200 U.S. 561 (1906) (requiring railroad to bear expense of widening existing trestle to accommodate widening of drainage waterway was not an unconstitutional "taking"). That case remains valid precedent. Indeed, the Eighth Circuit cited it in Chicago and NorthWestern, supra, stating:
 [I]t is well settled that railroads are not entitled to compensation for damage to their roadbeds caused by the installation of drainage improvements. See Chicago B Q R.R. v. State of Illinois ex. rel. Grimwood, 200 U.S. 561, 573, 26 S.Ct. 341, 342, 50 L.Ed. 596 (1906); Chicago B Q R.R. v. Bd. of Supervisors, 182 F. 291, 294 (8th Cir. 1910).
Chicago and North Western, supra, at 566. Regarding this issue, the Eighth Circuit also noted that because the statute in question did not require the railroad to bear the expense of widening the waterway, but rather only the expense of widening its own bridge (as is the case with A.C.A. § 14-121-805), the railroad itself is the only beneficiary of the expense it bears, and therefore is not entitled to compensation. See alsoSouthwest Railway Company v. Royall, 75 Ark. 532, 88 S.W. 555 (1905) (no compensation necessary for compliance with statute requiring railroad to bear cost of bridging road crossing).
Taking into consideration all of the above-discussed precedents, I conclude that in the situation you have described, the railroad company is responsible under current law for bearing the expense of widening its trestle in order to accommodate the necessary widening of the drainage ditch that runs under the trestle. The drainage improvement district may face a constitutional challenge, but the challengers will bear a heavy burden in establishing the unconstitutionality of the statute.
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
[1] The current law governing railroad crossings with public roads, highways, and streets is the Railroad Safety and Regulatory Act of 1993 (Act 726 of 1993, codified at A.C.A. § 23-12-1001 et seq.). The State Highway Commission has jurisdiction to administer this Act. It is my understanding that the State Highway Commission does not interpret this Act as superseding or impliedly repealing A.C.A. § 14-121-805), or as giving the Commission the authority to administer A.C.A. § 14-121-805. The Commission's interpretation will be upheld unless it is deemed to be clearly wrong. E.g., Cave City Nursing Home, Inc. v. Arkansas DHS,351 Ark. 13, 89 S.W.3d 884 (2002).